IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* BRANDON BARRICK,<br><br>                    Plaintiff/Relator,<br>v.<br><br>PARKER-MIGLIORINI INTERNATIONAL, LLC; PARKER INTERNATIONAL, INC. aka PMI FOODS-USA; COTTONWOOD TRADING, LLC; FORTUNA FOODS, LLC; JOHN AND JANE DOES 1-10,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:12-cv-00381-DB<br><br>District Judge Dee Benson |

Defendants Parker-Migliorini International, LLC, Parker International Inc., Cottonwood Trading, and Fortuna Foods, LLC have motioned for the court to dismiss the above captioned case in its entirety pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 35.) On December 9, 2015, the Court heard oral argument on the motion. At the hearing, Defendants were represented by Mark Gaylord. Plaintiff and Relator Brandon Barrick (Barrick) was represented by James Bradshaw. At the conclusion of the hearing, the Court took the motion under advisement. Now being fully advised, the Court renders the following Memorandum Decision and Order.

## BACKGROUND

The Amended Complaint is a declined *qui tam* action brought by Barrick, a former employee of the Defendants, who is asserting three causes of action under the False Claims Act (FCA). (Dkt. No. 21.) Barrick contends that false export certificates were obtained for U.S. beef

1

products which claim they were destined for Costa Rica, Honduras, and Moldova when the true destinations were either Japan or China. (*Id.* at ¶ 1.)

Defendants are a global company that provide "product procurement, sales, and logistics;" (Dkt. No. 35, p. 8–9) including supplying the needs of local wholesale markets by offering "beef, pork, and poultry to customers throughout the world." (*Id*. at 9.)

To understand Barrick's alleged scheme, it is necessary to understand how the exportation of meat and poultry is regulated in the United States. There are two departments within the United States Department of Agriculture (USDA) that are responsible for overseeing mandatory inspection of all meat products—the Food Safety and Inspection Service (FSIS) and the USDA Agriculture Marketing Services (AMS). (Dkt. No. 21, ¶ 25.)

FSIS is responsible for inspecting meat and poultry prior to export to ensure the meat complies with the USDA's standards. (*Id.* at ¶ 27). AMS develops Export Verification, or EV, programs to ensure meat certified for export is compliant with the specific standards of the receiving country where the receiving country has more rigorous standards than the USDA. (*Id.* at ¶ 28.)

Several countries have higher importation standards for U.S. meat than what is required by the USDA for domestic use in the United States. Additionally, several countries have blocked the importation of U.S. meat altogether. Relevant to Barrick's claims, Japan bans the importation of U.S. beef aged more than twenty months (*Id.* at ¶ 42(e)), Hong Kong has historically placed strict specifications on the importation of U.S. beef (*Id.* at ¶ 43(a)-(h)), and China has an absolute ban on U.S. beef importation. (*Id.* at ¶ 44(a).) Conversely, countries like Costa Rica, Honduras, and Moldova have minimal requirements for the importation of U.S. beef. (*Id.* at ¶¶ 49, 53.)

To export beef products from the United States, Defendants obtain export certificates from the meat packing facility. (*Id.* at ¶¶ 30, 66(h).) Meat packing facilities obtain export certificates from FSIS by undergoing a FSIS inspection. (*Id.* at ¶ 27.) FSIS doesn't charge for the inspection of meat during regular business hours as long as the receiving country has the same or lesser inspection requirements as the USDA. (*Id.* at ¶ 32). If the destination country has stricter inspection standards, like Japan, FSIS charges an hourly rate for a Voluntary Inspection. (*Id.* at ¶¶ 34–36.)

The scheme alleged by Barrick involves the inspection process; specifically, how the Defendants obtained export certificates. Barrick alleges two separate schemes:

Japan Scheme
- 1. Defendants receive an order originating in Japan. (*Id.* at ¶ 66).
- 2. Defendants place an order with one of a variety of meat packing facilities, informing the facility that the destination of the meat is Costa Rica or Honduras. (*Id.*)
- 3. The meat receives a free inspection, pursuant to FSIS's regulations. (*Id.*)
- 4. Once the export certificates are obtained, the meat is shipped to Costa Rica or Honduras, repackaged, and then shipped to Japan. (*Id.*)

China Scheme
- 1. Defendants receive an order originating in China. (*Id.* at ¶ 82.)
- 2. Defendants place an order with one of a variety of meat packing facilities, informing the facility that the destination of the meat is Moldova. (*Id.*)
- 3. The meat receives a free inspection, pursuant to FSIS's regulations. (*Id.*)
- 4. Once the export certificates are obtained, Defendants change the shipping manifestations to Hong Kong. (*Id.*)
- 5. Once the meat arrives in Hong Kong, Defendants use smugglers to traffic the meat into China. (*Id.* at ¶ 83.)

Barrick contends that the loss to the government occurs when Defendants obtain a FSIS inspection and exportation certificate for free where Defendants would be required to pay for a FSIS inspection for countries like Japan or Hong Kong. (*Id.* at ¶ 59.) According to Barrick, Defendants bear the burden of any inspection costs. (*Id.* at ¶ 66(h).)

On April 20, 2012, Barrick filed the original FCA complaint under seal and subsequently provided a copy to the government so that the government could determine whether or not to intervene. (Dkt. No. 1.) After Barrick's disclosure to the government, the FBI obtained a search warrant and performed an "investigation and raid" of the Defendants' businesses. (Dkt. No. 21, ¶ 91.) On November 14, 2013, one month after the FBI raid, Barrick was terminated from his employment. (*Id.* at ¶ 92.) Further, as a result of the FBI's investigation Defendants plead guilty to one count of violating 21 U.S.C. § 611(b)(5), a misdemeanor. (*Id.* at ¶ 9, n.2.)

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007). The Court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 (2007). Further, though all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Additionally, for a claim to proceed under the FCA, the plaintiff must satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010). Rule 9(b) demands that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. "Rule 9(b) does not require that

4

a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid. Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are alleged to be responsible." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997) (citations omitted).

## CLAIM ELIGIBILITY UNDER THE FCA

"The FCA 'covers all fraudulent attempts to cause the government to pay out sums of money.'" *Lemmon*, 614 F.3d at 1167 (citations omitted). Section 3730(b) of the FCA permits *qui tam* actions, which allow an individual plaintiff to sue on behalf of the government. Once a *qui tam* action is filed, the government may intervene and take over the plaintiff's case. 31 U.S.C. § 3730(b)(2). If the government declines to intervene, the plaintiff or "relator" may proceed while sharing any recovery with the government. 31 U.S.C. § 3730(c)(3). In this case, on February 19, 2015, the government declined to intervene; therefore, Barrick is proceeding as a relator under the FCA. (Dkt. No. 21, ¶ 10.)

Barrick raises three claims under the FCA. First, Barrick alleges a reverse false claim under 31 U.S.C. § 3729(a)(1)(G). (*Id.* at ¶ 94–101.) Second, Barrick alleges a false claims conspiracy under 31 U.S.C. § 3729(a)(1)(C). (*Id.* at ¶¶ 102–110.) Finally, Barrick alleges Defendants fired Barrick in retaliation for his FCA reporting activities in violation of § 31 U.S.C. § 3730(h). (*Id.* at ¶¶ 111–14.).

**I. Application of Rule 9(b) to Barrick's Reverse False Claim and FCA Conspiracy Claim**

Under the FCA, "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an

5

obligation to pay or transmit money or property to the Government . . . is liable to the United States Government . . . ." 31 U.S.C. § 3729(a)(1)(G). Also known as a reverse false claim, § 3729(a)(1)(G) provides a civil cause of action, which can result in a penalty per violation of the FCA and treble damages. *See* 31 U.S.C. § 3729(a)(1). Additionally, § 3729(a)(1)(C) provides for liability where a party "conspires to commit a violation of" § 3729(a)(1)(G).

Defendants provide the Court four grounds on which to dismiss all of or part of Barrick's reverse false claim and conspiracy claim, including failure to meet the particularity requirements of Rule 9(b). (*See generally* Dkt. No. 35.) The Court finds that Barrick has failed to satisfy the heightened pleading burden of Rule 9(b); therefore, it is unnecessary for the Court to examine the Defendants' alternative grounds for dismissal.

In the context of the FCA, the Tenth Circuit has held, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citations omitted); *Lemmon*, 614 F.3d at 1172 (finding the plaintiff satisfied Rule 9(b) by alleging the who, what, when, and where of the defendant's alleged fraud); *United States ex rel. Blyn v. Triumph Group, Inc.*, Case No. 2:12-cv-922, 2015 WL 5593893, at *9 (D. Utah Sept. 22, 2015). Mere reference to a "general scheme or methodology" is insufficient to satisfy Rule 9(b). *United States ex rel. Schwartz v. Costal Healthcare Group, Inc.*, No. No. 99-3105, 2000 WL 1595976, at * 6 (10th Cir. 2000) (unpublished). An FCA claim should be dismissed if the relator fails to identify "any person, place or time when an actual false claim or other illegal activity occurred." *Id.*

Barrick cites *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163 (10th Cir. 2010) and *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)

for the proposition that Rule 9(b) is relaxed under the 2009 amendments to the FCA. (Dkt. No. 39, p. 8.) The Tenth Circuit has yet to expressly adopt a relaxed application of Rule 9(b) in FCA cases. *See Lemmon*, 614 F.3d at 1172. However, the Fifth Circuit has permitted FCA actions to proceed if the plaintiff alleges the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

The Court does not need to determine which standard is applicable to Barrick's FCA claims because under either standard, Barrick's claims fail to meet the demands of Rule 9(b). The Amended Compliant merely recites a "general scheme or methodology" whereby Defendants allegedly avoided an obligation owing to the government. *Schwartz*, 2000 WL 1595976, at *6. Specifically, Barrick's Amended Compliant fails to allege beyond generality "who" was responsible for the alleged false statements, "when" the alleged false statements occurred, and "how" the Defendants' statements were fraudulent. Moreover, under the Fifth Circuit's relaxed application of Rule 9(b), Barrick's allegations still fail. Barrick has not provided the Court with any facts that would provide a "strong inference" that the Defendants used false statements to avoid an obligation to the government.

**A. Who, When, and How of Defendants' Fraud**

*i. Who*

"Rule 9(b) requires that a complaint set forth the identity of the party making the false statements, that is, which statements were allegedly made by whom." *Schwartz*, 124 F.3d at 1253; *Williams v. Martin-baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004) (affirming the dismissal of an FCA case for failing to plead "who precisely was involved in the fraudulent

activity"). The Amended Complaint fails to identify, beyond sweeping generality, any individual who made a false statement to the government. For example, Barrick alleges:

> In making its order, defendants tell the meat packing facility that the product is to be shipped, not to Japan, but to a specified facility in a sham destination country, usually Costa Rica or Honduras;
>
> Defendants place this order falsely specifying the destination country as Costa Rica or Honduras.
>
> (Dkt. No. 21, ¶ 66(d), (e).)
>
> In making its order, defendants declare that the beef is to be shipped to a specified destination within the Eastern European country of Moldova . . . .
>
>  (*Id.* at ¶ 82(c).)

Barrick's Amended Complaint does not identify a single employee of the Defendants or department within one of the Defendants' entities that was responsible for one of these alleged false statements. (*See generally* Dkt. No. 21.) Arguably, Defendants' various entities are made up of hundreds, if not thousands, of employees. At a minimum, Rule 9(b) demands that Barrick identify the employee or employees responsible for the alleged false claims under the FCA.

Barrick alleges that "through his own efforts of reviewing, analyzing and comparing financial records and other business documents of the [Defendants]", Barrick was able to discover Defendants' fraud. (Dkt. No. 21, ¶¶ 59–60.) If Barrick had such intimate access to Defendants' books and records, he theoretically should be able to point to at least one transaction where he can identify the source of the false statement. Without more specificity regarding "who" was responsible for the alleged false statements, Barrick has failed to satisfy the heightened pleading burden of Rule 9(b).

*ii. When*

Rule 9(b) demands that Barrick provide the Court when, approximately, Defendants' alleged violations of the FCA occurred.  *Lemmon*, 614 F.3d at 1172 (upholding an FCA pleading where "Plaintiffs documented the dates on which specific violations took place and the dates on which payment requests were submitted").  Barrick alleges that from 2004 to 2012, Defendants shipped "banned U.S. beef products" into Japan and China while purposefully avoiding FSIS inspection fees.  (Dkt. No. 21, ¶¶ 65, 76, 81.)  Barrick's general allegations of the timing of Defendants' illicit activity are insufficient under Rule 9(b).  Barrick's eight-year time frame potentially implicates a multitude of transactions and fails to place Defendants' on notice of Barrick's allegations.  *See Schwartz*, 124 F.3d at 1253; *Sikkenga*, 472 F.3d at 726–27.

*iii. How*

Rule 9(b) also requires Barrick to provide the Court "well-pleaded facts" alleging fraudulent conduct that goes beyond "conclusory allegations." *Sikkenga*, 472 F.3d at 726; *United States ex rel. Ellsworth v. United Bus. Brokers of Utah, LLC*, No. 2:09-cv-353, 2011 WL 1871225, at *3 (D. Utah May 5, 2011).  Specifically, Barrick "must provide [the Court] details regarding *how* the alleged conduct was fraudulent and the *content* of the fraudulent conduct . . . ." *Ellsworth*, 2011 WL 1871225, at *3 (emphasis in original).  In *Ellsworth*, this Court dismissed an FCA claim where the plaintiff failed to allege the "content" of the false statements allegedly submitted to the government.  *Id.*  The Court noted that merely reciting that the defendant submitted a "false statement" was insufficient under Rule 9(b). *Id.*

Like the plaintiff in *Ellsworth*, Barrick has failed to identify the content of the false statements allegedly submitted to the government.  Barrick merely uses conclusory statements that Defendants have been shipping "banned U.S. beef products" into Japan and China since

9

2004. (Dkt. No. 21, ¶¶ 65, 76, 81.) Barrick doesn't identify the specific type of beef shipped, the quantity of beef shipped, or why FSIS would consider the beef ineligible for importation by Hong Kong or Japan. Simply reciting the conclusion Defendants shipped "banned U.S. beef" is insufficient to provide Defendants' the type of notice demanded by Rule 9(b).

Further, Barrick fails to show the Court how Defendants' alleged misrepresentations were fraudulent. *See Ellsworth*, 2011 WL 1871225, at * 4 (noting, "rather than using conclusory statements that the financial representations were fraudulent, the court needs details showing how the representations were fraudulent"). For example, if Defendants truthfully disclosed the true country of origin as Japan or Hong Kong (or China), the Court is left wondering what obligation was fraudulently avoided. When an export certificate is requested, can FSIS determine based on the information provided that beef is ineligible for shipment to Japan or Hong Kong, deny the application, and therefore the Defendants never incur a FSIS inspection fee? Barrick has failed to plead facts with particularity that describe how the Defendants' alleged scheme results in a fraudulent avoidance of an obligation owed to the government.

### B. Indicia of Reliability Standard

The Fifth Circuit has noted that the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b). Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim Act." *Grubbs*, 565 F.3d at 190. In doing so, the Fifth Circuit held that an FCA complaint could survive a Rule 9(b) challenge "by alleging *particular details* of a scheme to submit false claims paired with *reliable indicia* that lead to a strong inference that claims were actually submitted." *Id.* (emphasis added). Even if the Court were to entertain the Fifth Circuit's relaxed application of Rule 9(b), Barrick's claims still fail to plead with fraud particularity.

In *Grubbs*, the plaintiff alleged that the defendants disclosed to him their fraudulent billing scheme for billing patient visits that never actually occurred and "instructed him on how he was to contribute to the scheme." *Id.* at 184. The plaintiff was able to point to specific conversations he had with the defendants, the nursing staff, and the hospital administrator regarding alleged improper billing. *Id.* In finding the plaintiff survived Rule 9(b), the *Grubbs* court noted:

> The complaint sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud. Grubbs describes in detail, including the *date, place, and participants*, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot. He alleges his *first-hand experience of the scheme unfolding as it related to him*, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred. Also alleged are *specific dates that each doctor falsely* claimed to have provided services to patients and often the type of medical service or its Current Procedural Terminology code that would have been used in the bill.

*Id.* at 191–92 (emphasis added).

Unlike *Grubbs*, Barrick is unable to point to specific facts that show the Court he had "first-hand experience of the [Defendants] scheme as it related to him." *Id.* Barrick does not identify specific conversations he had with the Defendants' employees that lead him to discover Defendants' fraud. (*See generally* Dkt. No. 21.) Barrick cannot point to particular reports or documents that form the basis of his theory that Defendants used false statements to avoid an obligation to the government. (*Id.*) Moreover, as aforementioned, Barrick fails to point to dates, places, and participants in Defendants' alleged fraud.

Barrick contends that the Defendants' guilty plea, coupled with Barrick's general allegations, is sufficient under Rule 9(b). (Dkt. No. 39, p. 13.) In the Amended Complaint, Barrick notes that Defendants plead guilty to one count of violating 21 U.S.C. § 611(b)(5). (Dkt. No. 21, ¶ 9, n.2.) However, Defendants' guilty plea is insufficient to cure Barrick's deficient

pleading.  Defendants' statement in advance of plea merely recites, generally, how the Defendants' committed a single violation of § 611(b)(5) by altering the country of destination on a shipper's certificate.  (Dkt. No. 39-1, p. 3.)  The guilty plea does not confirm Barrick's theory that Defendants knowingly misinformed their meat packing facilities of the meat's destination country in order to avoid FSIS inspection fees.  (Dkt. No. 21, ¶¶ 66, 82.)

In short, Barrick provides a theory as to how Defendants avoided an obligation to the government; however, facts—not theories—make lawsuits.  Therefore, the Court finds that Barrick's claims under § 3729(a)(1)(G) and § 3729(a)(1)(C) are dismissed without prejudice pursuant to Rule 9(b).  Further, the Court expresses serious reservations as to whether the Amended Complaint satisfies even the Rule 8 pleading standard, but finds it is unnecessary to reach Rule 8 considering the Court's application of Rule 9.

## II. Barrick's FCA Retaliation Claim

> The FCA's anti-retaliation provision provides relief to any employee who:
>
> is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *because of lawful* acts done by the employee, contractor, agent or associated others *in furtherance of an action* under this section or other efforts to stop 1 or more violations of [the FCA].

31 U.S.C. § 3730(h)(1) (emphasis added).  To sustain a claim under § 3730(h), a whistleblower or employee must "plausibly allege facts showing that: (1) the employee engaged in protected activity; (2) the employer received notice of the employee's protected activity; and (3) the employer discriminated against or discharged the employee for engaging in protected activity." *United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2015 WL 6801829, at *7 (D. Kan. Nov. 5, 2015).[1]

---

[1] In 2009, the FCA's anti-retaliation provision was amended.  *See* The Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21, § 3730, 123 Stat. 1617, 1624–25 (2009).  The Tenth Circuit has

To adequately plead notice, Barrick is required to provide the Court "'facts which would demonstrate that [D]efendants had been put on notice that [Barrick] was either taking action in furtherance of a qui tam action or assisting in an FCA action brought by the government.'" *Sikkenga*, 472 F.3d at 729 (citations omitted); *McBride v. Peak wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012); *Feaster*, 2015 WL 6801829, at *7. "Notice may be provided in a number of ways: for example, by informing the employer of 'illegal activities' that would constitute fraud on the United States, . . . by warning the employer of regulatory noncompliance and false reporting of information to a government agency, . . . or by explicitly informing the employer of an FCA violation." *McBride*, 688 F.3d at 704 (citations omitted).

The Amended Complaint alleges that the FBI conducted a raid of the Defendants' business based on the information provided by Barrick and, one month later, Barrick was terminated form his employment. (Dkt. No. 21, ¶¶ 91–92.) While the timing of Barrick's termination is suspect, the FCA demands that the Defendants be on notice of Barrick's protected activity to engage in retaliation within the meaning of § 3730(h). The Amended Complaint fails to allege that the Defendants had notice of Barrick initiating an FCA action. (*Id.*) Therefore, Barrick's § 3730(h) retaliation claim is dismissed pursuant to Rule 12(b)(6) without prejudice for failure to state a claim on which relief may be granted.

---

yet to interpret the new language found in § 3730(h). However, the plain language of § 3730(h) suggests that the FCA still requires the employer be on notice of the employee's protected activity. *See Feaster*, 2015 WL 6801829 at *7. Section 3730(h) forbids retaliation when an employee engages in an act that is in "furtherance of an action" under the FCA. 31 U.S.C. § 3730(h). To prove retaliatory motive, § 3730(h) demands that the employee be terminated "because of lawful acts" performed by the employee under the FCA. *Id.* By definition, Defendants must be on notice that Barrick is the source of the FCA complaint for the Defendants to be liable for retaliating against Barrick.

## CONCLUSION

Barrick's claims under § 3729(a)(1)(G) and § 3729(a)(1)(C) of the FCA are dismissed without prejudice pursuant to Rule 9(b). Barrick's § 3730(h) retaliation claim is dismissed without prejudice pursuant to Rule 12(b)(6). Defendants' motion to dismiss is GRANTED.

Dated: December 21, 2015.

BY THE COURT:

Dee Benson
United States District Judge