Mark R. Gaylord (#5073)
Tyler M. Hawkins (#13234)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone:  (801) 531-3000
Facsimile:  (801) 531-3001
gaylord@ballardspahr.com
hawkinst@ballardspahr.com

*Attorneys for Defendant, Parker-Migliorini International, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* BRANDON BARRICK, | **DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUEST FOR DOCUMENTS, INTERROGATORIES, AND REQUESTS FOR ADMISSION** |
| **Plaintiff/Relator,** | |
| **v.** | |
| **PARKER-MIGLIORINI INTERNATIONAL, LLC and JOHN AND JANE DOES 1-10;** | **Case No.:  2:12-cv-00381-DB** |
| **Defendants.** | **Honorable Dee Benson** |

Defendant, Parker-Migliorini International, LLC, by and through its counsel, hereby

objects and responds to Plaintiff's Request to Defendant (Set One) For: 1) Production of

Documents; 2) Interrogatories; and 3) Requests for Admission (the "Discovery Requests").

## GENERAL OBJECTIONS

1.     Defendant objects to the Discovery Requests on the grounds that that they purport

to impose obligations upon Defendant that exceed the obligations imposed by Rules 33, 34 and

36 of the Federal Rules of Civil Procedure, including the Definitions and Instructions which exceed the limits of the Federal Rules of Civil Procedure.

2.      Defendant objects to the Discovery Requests on the grounds that they seek to impose an unreasonable definition of the "Relevant Time Period" to include a period of two and a half years (from September 1, 2011 through March 28, 2014). This case involves a claim that Plaintiff was terminated in violation of 31 U.S.C. § 3730(h) as a result of an FBI Raid that occurred on October 10, 2012. The only relevant time period is between the date of the FBI Raid, October 10, 2012, and the date of Barrick's termination, November 14, 2012. Defendant had no knowledge that Barrick was providing information to the FBI or the government prior to his termination. Any evidence, information, or documents after Barrick's termination is not relevant to the parties' claims or defenses in this case. Defendant has withheld documents on the basis of this objection.

3.      Defendant objects to the Discovery Requests on the grounds that they are overbroad, unduly burdensome, and seek information that is not relevant to the parties' claims or defenses. Defendant has withheld documents on the basis of this objection.

4.      Defendant objects to the Discovery Requests on the grounds that they call for the production of information and documents that are protected by the attorney-client privilege and/or the work-product doctrine. As specifically noted herein below, the Discovery Requests seek information and documents relating to steps (or processes) taken by Defendant after the FBI Raid that were in anticipation of criminal and civil litigation. By their very nature, the Discovery Requests seek information relating to Defendant's work-product regarding an on-going investigation being undertaken by the FBI and U.S. Department of Justice ("DOJ"). To reveal

such information would infringe upon Defendant's constitutional rights and invade the privileges afforded by law regarding the attorney-client privilege and work-product doctrine. Defendant has withheld documents on the basis of this objection.

5.      Defendant objects to the Discovery Requests on the grounds that they exceed the limits agreed to and imposed by the Court pursuant to the Scheduling Order [Dkt. 96]. The parties agreed and the Court ordered that the parties would be limited, during the first phase of discovery, to the service of four (4) requests for documents, four (4) interrogatories, and four (4) requests for admissions. Plaintiff has substantially exceeded these limits with regards to its requests for documents and interrogatories. Defendant has no obligation to respond to more than four requests for documents and four interrogatories.

## REQUESTS FOR PRODUCTION

### General Objection

Defendant objects to the Instructions referenced at pages 4 through 6 to the extent they seek to impose obligations on Defendant beyond Rule 34 of the Federal Rules of Civil Procedure.

**REQUEST NO. 1**:

Please produce all DOCUMENTS or correspondence, email or otherwise, in your possession regarding the allegations and defenses in this case, including but not limited to the full PERSONNEL FILE for each employee that Defendant claims in their Motion for Summary Judgment as being included in the 25% of its U.S. employees affected by the purported 2012 general reduction in workforce.

## RESPONSE OF DEFENDANT

Defendant objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, vague and ambiguous with regards to "allegations and defenses in this case." It is unclear whether Plaintiff is seeking all documents regarding Defendant's denial that it terminated him in violation of 31 U.S.C. § 3730(h) as alleged or some specific "allegation or defense." Defendant further objects to this Request No. 1 on the grounds that as part of their obligations under Rule 26(a), the parties are obligated to serve initial disclosures wherein each party identifies (and/or produces) "all documents" they may "use to support their claims or defenses." Request No. 1 is duplicative of this obligation which Defendant already fulfilled on February 28, 2017.

Defendant also objects to Request No. 1 to the extent it seeks production of the Personnel Files of each employee that was effected by the reduction-in-force ("RIF") implemented by Defendant in November 2012. An employee's Personnel File contains private and confidential information related solely to that employee. Although Plaintiff has offered to stipulate to the production of such documents under the Court's protective order, Defendant objects to the production of the Personnel Files of each employee because they are not relevant to the parties' claims or defenses in this case. The qualification and job performance of employees in comparison of the Plaintiff is not at issue. Defendant's decisions with regards to the RIF were premised upon facts and circumstances that extended beyond the performance of an employee and had to do with the business circumstances in which Defendant found itself in October and November 2012.

Defendant objects to Request No. 1 to the extent it seeks to invade the attorney-client privilege and/or work-product doctrine.

Without waiving the forgoing objections, Defendant incorporates its initial disclosures produced on February 28, 2012 along with the documents produced to date, the Motion for Summary Judgment [Dkt. 91], the Declaration of Steven Johnson [Dkt. 91-1], and Declaration of Darin Parker [Dkt. 91-2], all of which included documents and information relating to its defenses.  Concurrently herewith, Defendant is producing additional documents that are responsive to Request No. 1.

**REQUEST NO. 2:**

[i] Please produce all DOCUMENTS regarding or related to the FBI RAID and the execution of a search warrant on the premises of Defendant by the FBI that occurred on or around October 10, 2012, including but not limited to: [ii] documents which evidence or relate to the process through which You sought to learn the reasons for the FBI RAID; [iii] documents which evidence or relate to the process through which You sought to learn the potential sources of information upon which the FBI relied in obtaining the search warrant or questioning potential witnesses or targets; [iv] documents which evidence or relate to the process through which You underwent to confirm or eliminate the possibility that employees or other agents of Defendant had provided information to the FBI prior to the raid, including a list of all employees with knowledge of the conduct outlined in Request for Admission No. 1 below; [v] all documents that evidence how Defendant learned that Relator Brandon Barrick provided information to the FBI or other governmental agents *prior to* the FBI RAID; [vi] all documents that establish the first time any person, including any officer or employee of Defendant, posited the possibility that

Brandon Barrick might have provided information to the FBI or other governmental agent; and [vii] all documents relating in any manner to the process through which Defendant sought to confirm that Brandon Barrick had supplied information and worked with the government and the FBI.

### RESPONSE OF DEFENDANT

Defendant objects to Request No. 2 on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and exceeds the limits agreed to and imposed by the Court pursuant to the Scheduling Order [Dkt. 96]. Request No. 2 actually consists of seven (7) separate requests for documents, each of which seeks a different set of documents. When combined with Request No. 1, Plaintiff has exceeded the limit imposed by the Court by four requests.

Defendant further objects to Request No. 2, in its entirety, on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. At the time of Plaintiff's termination, as far as Defendant knew it was the target of an investigation by the U.S. DOJ, had more than $5 million seized by the FBI, received a default notice from its primary lender (Zions Bank), and had one of its largest suppliers come under investigation for an E-coli scare that resulted in dozens of containers - that were on the water and in transit - to be held from their final destinations. A significant number of documents responsive to this Request and other Discovery Requests include privileged communications between counsel and officers, directors, members, and employees who were collecting information in anticipation of litigation.

Defendant objects to Request No. 2[i][1] on the grounds it is overly broad and unduly burdensome and is vague and ambiguous. It requests virtually every document that the FBI seized as part of its execution of the search warrant. This not only includes every piece of paper located on the premises on October 10, 2012, but also the nearly five terabytes of electronic data downloaded from Defendant's servers and various desktop and laptop computers by the FBI during the Raid. Such a request is unreasonable, harassing and not proportional to the issues and/or the parties' claims or defenses.

Defendant objects to Request No. 2[ii] on the grounds that it falsely implies that Defendant implemented a "process" through which Defendant "sought to learn the reasons for the FBI RAID." Between the date of the FBI Raid (October 10, 2012) and Barrick's termination, Defendant did not seek to "learn the reasons for the FBI Raid." By its very nature, Request No. 2[ii] seeks information relating to the Defendant's attorney work-product regarding an on-going investigation being undertaken by the FBI and U.S. DOJ and seeks to invade the attorney-client privilege and work-product doctrine. Defendant further objects to Request No. 2[ii] to the extent it seeks documents during the "Relevant Time Period" unilaterally established by Plaintiff. First, based on the language of Request No. 2[ii], any document or information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid. Second, any document or information dated after October 12, 2012 is privileged in terms of learning the reasons for the FBI Raid. Further, the request is objectionable because why the FBI raided

---

[1] As noted above, Request No. 2 is actually seven separate requests. For the benefit of responding to Request No. 2, Defendant has identified each request separately.

Defendant is not relevant to the parties' claims or defenses. Without waiving its objection to Request No. 2[ii], Defendant has no documents responsive to Request No. 2[ii]

Defendant objects to Request No. 2[iii] on the grounds that it falsely implies there was a "process" through which Defendant "sought to learn the potential sources of information upon which the FBI relied in obtaining the search warrant or questioning potential witnesses or targets." Request No. 2[iii] is vague and ambiguous as to the term "process" and seeks information relating to the Defendant's work-product regarding an on-going investigation being undertaken by the FBI and U.S. DOJ. Defendant further objects Request No. 2[iii] on the grounds that it seeks to invade the attorney-client privilege and work product doctrine. Defendant further objects to Request No. 2[iii] to the extent it seeks documents during the "Relevant Time Period" unilaterally established by Plaintiff. First, based on the language of Request No. 2[iii] any document or information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid. Second, any document or information dated after October 12, 2012 is privileged in terms of learning the potential sources of information upon which the FBI relied. At that point, it was immaterial to Defendant upon what potential sources of information the FBI relied. The FBI had served and conducted its raid of Defendant's business at that point. Without waiving the foregoing objections, Defendant has produced documents responsive to this request as part of its Initial Disclosures, dated February 28, 2012, the Motion for Summary Judgment [Dkt. 91], Declaration of Steve Johnson [Dkt. 91-1] and Declaration of Darin Parker [Dkt. 91-2]. In addition, concurrent herewith, Defendant is producing documents relating to Defendant's efforts to recover documents from the U.S. DOJ and FBI after the raid and prior to Barrick's termination.

Defendant objects to Request No. 2[iv] on the grounds that it falsely implies Defendant had a "process" through which it sought to "confirm or eliminate the possibility that employees or other agents of Defendant had provided information to the FBI prior to the raid, including a list of all employees with knowledge of the conduct outlined in Request for Admission No. 1." Defendant further objects to Request No. 2[iv] on the grounds that it is vague and ambiguous. The second clause of the above quoted language does not follow from the first. It falsely assumes Defendant undertook such efforts, when it had no reason to do so. Defendant further objects to Request No. 2[iv] on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine by asking Defendant to produce documents regarding the "process" it purportedly undertook. Defendant further objects to Request No. 2[iv] to the extent it seeks documents during the "Relevant Time Period" unilaterally established by Plaintiff. First, based on the language of Request No. 2[iii] any document or information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid. Second, any document or information dated after October 12, 2012 is privileged. Without waiving the foregoing objections, Defendant has no documents responsive to Request No. 2[iv].

Defendant objects to Request No. 2[v] on the grounds that it falsely implies that Defendant sought to learn that "Relator Brandon Barrick provided information to the FBI or other governmental agents *prior to* the FBI RAID." Defendant has expressly asserted that it did not know that Barrick had provided any information to the FBI or governmental agent prior to the FBI Raid. (*See* Answer to Second Amended Complaint, [Dkt. 90]; Motion for Summary Judgment [Dkt. 91]; Declarations of Steve Johnson and Darin Parker [Dkts. 91-1 and 91-2.) Nor did Defendant know that Barrick was the relator prior to his termination on November 14, 2012.

(Id.)  Defendant objects to Request No. 2[v] to the extent it seeks documents during the
"Relevant Time Period" unilaterally established by Plaintiff.  Based on the language of Request
No. 2[v] any document or information dated before October 10, 2012 would not exist because
Defendant did not know Barrick was providing information to the FBI or government.
Defendant further objects to Request No. 2[v] on the grounds that it seeks to invade the attorney-
client privilege and work-product doctrine.  Defendant further objects to Request No. 2[v] on the
grounds it is not relevant to the parties' claims or defenses.  Barrick admits that he
misappropriated confidential business information of the Defendants and turned it over to the
FBI and the government prior to the FBI Raid.  The principal question at issue in this case is
when Defendant learned that Barrick provided information to the FBI or the government.
Without waiving the foregoing objections, on or about October 20, 2013, almost a year after
Barrick's termination, Defendant learned that Barrick was communicating with the FBI.
Defendant discovered this fact when it uncovered emails stored on a computer used by Barrick
during his employment.  The emails, however, only revealed communications with the FBI.  The
emails did not reveal what, if any, information Barrick provided to the FBI.  The disclosure of
this information shall not be deemed a waiver of the attorney-client privilege or work-product
doctrine.  This disclosure is merely to reflect when Defendant discovered Barrick had
misappropriated confidential information and was complicit with the FBI.

        Defendant objects to Request No. 2[vi] on the grounds that it is vague and ambiguous
with regards to the term "posited."  The general definition of the term "posited" means "to put
forward for consideration something such as a suggestion, assumption, or fact."  It presumes that
such an event occurred at some time during the unilateral Relevant Time Period established by

Plaintiff. First, based on the language of Request No. 2[vi] any document or information dated before October 10, 2012 would not exist because Defendant did not know the FBI or any government was investigating Defendant's business or considering a raid. Second, any document or information dated after October 12, 2012 relating to what it learned regarding the FBI raid or any government agency is privileged information. Without waiving the foregoing objections Defendant incorporates its response to Request No. 2[v] above.

Defendant objects to Request No. 2[vii] on the grounds that it falsely implies Defendant "sought to confirm that Brandon Barrick had supplied information and worked with the government and the FBI." The only relevant time period is between October 10, 2012, when the FBI served the search warrant upon Defendant, and when Barrick was terminated on November 14, 2012. Barrick has admitted he misappropriated, and subsequently provided, confidential business information belonging to Defendant and worked with the government and the FBI. The issue is when Defendant learned that Barrick was providing information in furtherance of an action under section 31 U.S.C. § 3729 or 3730. Defendant further objects to Request No. 2[vii] to the extent it seeks to invade the attorney-client privilege or work-product doctrine. Defendant has affirmatively asserted it did not have knowledge Barrick was communicating with the FBI or any government agency prior to October 11, 2013. Defendant incorporates its response to Request No.2[v] above as if fully stated herein. Further, without waiving the foregoing objections, Defendant will produce concurrently herewith an email, dated October 20, 2014, from Amanda Berndt, Assistant U.S. Attorney, to Mark R. Gaylord, counsel for Defendant, wherein Ms. Berndt notified Defendant that Barrick had filed a *qui tam* action against it. Ms. Berndt's email represents the first time Defendant learned of and/or became aware that an action

had been filed in which Barrick alleged violations of 31 U.S.C. § 3729.  Prior to October 20,

2014, Defendant had no knowledge that Barrick, the FBI, U.S. DOJ or any other government

agency or entity was investigating it for alleged violations of the False Claims Act.  A copy of

Ms. Berndt's letter is produced herewith as Bates No. PMI00000927-PMI00000928.

### REQUEST NO. 3:

Please produce FINANCIAL INFORMATION for YOU, including any domestic and

international partner, affiliate, or division, in THE RELEVANT TIME PERIOD, as these terms

are defined herein.

### **RESPONSE OF DEFENDANTS**

Defendant objects to Request No. 3 on the grounds that it is overly broad, unduly

burdensome, vague, and ambiguous and exceeds the limits agreed to and imposed by the Court

pursuant to the Scheduling Order [Dkt. 96].  Request No. 3 when combined with Requests 1 and

2 actually has exceeded the limit imposed by the Court by five requests.  Request No. 3 is also

overly broad and unduly burdensome in that it not only seeks financial information of Defendant,

but also every "domestic and international partner, affiliate, or division."  The phrase "domestic

and international partner, affiliate, or division" is vague and ambiguous.  In addition, the

financial information of every "domestic and international partner, affiliate and division," is

simply not relevant to the party's claims and/or defenses.  Defendant also objects to the breadth

and scope of the definition of Financial Information.  Defendant's account receivable schedules,

federal and state tax returns, monthly bank statements, profit and loss statements, and statements

of retained earnings is confidential business information that has no bearing on the issues in this

case.  It is equally overly broad and unduly burdensome because it seeks information for a period

of time (September 1, 2011 through March 28, 2014) that is unreasonable and amounts to hundreds of thousands of pages. The only relevant time period is between the date of the FBI Raid (October 10, 2012) and Barrick's termination (November 14, 2012).

Without waiving its objections hereto, Defendant affirmatively asserts that it has provided sufficient information relating to the circumstances that gave rise to the RIF. This includes Defendant's initial disclosures, dated February 28, 2017, the Motion for Summary Judgment [Dkt 91], the Declaration of Steven Johnson [Dkt. 91-1] and Declaration of Darin Parker [Dkt 91-2]. In addition, concurrent herewith Defendant is producing additional documents relating to its relationship with Zions Bank and its efforts to avoid having its line of credit withdrawn due to a claimed default of the loan agreement. Except as expressly stated herein, Defendant is withholding and not producing any other Financial Information.

**REQUEST NO. 4:**

If you reviewed or relied upon any DOCUMENTS in answering any Interrogatory or Request for Admission below, please produce any and all such DOCUMENTS.

**RESPONSE OF DEFENDANTS**

Defendant objects to Request No. 4 on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and exceeds the limits agreed to and imposed by the Court pursuant to the Scheduling Order [Dkt. 96]. Request No. 4 when combined with Request Nos. 1 through 3 actually has exceeded the limit imposed by the Court by six requests.

Defendant further objects to Request No. 4 on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. As noted in response to the Interrogatories and Requests for Admissions hereinbelow, Plaintiff seeks information that is protected by the

attorney-client privilege and work-product doctrine. At the time of Plaintiff's termination, Defendant was the target of an investigation by the U.S. DOJ, had more than $5 million seized by the FBI, received a default notice from its primary lender (Zions), and had one of its largest suppliers come under investigation for an E-coli scare that resulted in dozens of containers - that were in transit - to be held from their final destinations. A significant number of documents responsive to this Request and other Discovery Requests include privileged communications with counsel and/or officers, directors, members, and employees who were collecting information in anticipation of litigation.

Defendant incorporates the objections set forth below with regards to each Interrogatory and/or Request for Admission as though set forth herein.

## INTERROGATORIES

### General Objection

Defendant objects to the Instructions referenced at pages 7 through 9 to the extent they seek to impose obligations on Defendant beyond Rule 33 of the Federal Rules of Civil Procedure.

### INTERROGATORY NO. 1:

[i] Focusing on the time period between the FBI RAID and Plaintiff's TERMINATION, please describe in detail the process through which YOU sought to learn the reasons for the FBI action and the sources through which the FBI had obtained their information, including, but not limited to: [ii] all actions through which YOU attempted to confirm or eliminate the possibility that employees or agents of Defendant had provided information to the FBI prior to the raid; [iii] all facts or information YOU knew or otherwise became aware in regards to the reasons for the

FBI RAID; **[iv]** all facts or information YOU knew or otherwise became aware in regards to the sources through which the FBI obtained their information; and **[v]** all facts or information YOU knew or suspected at the time of TERMINATION in regards to whether any employee or agent of Defendant had provided information to the FBI or other government agent either prior to or after the FBI RAID.

### RESPONSE OF DEFENDANT

Defendant objects to Interrogatory No. 1 in its entirety on the grounds that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the limits agreed to and imposed by the Court pursuant to the Scheduling Order [Dkt. 96]. Interrogatory No. 1 actually consists of five (5) separate interrogatories, each of which seeks different information. When combined with Interrogatory Nos. 2, 3[2] and 4, Plaintiff has exceeded the limit imposed by the Court by eight interrogatories.

Defendant further objects to Interrogatory No. 1, in its entirety, on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. At the time of Plaintiff's termination, as far as Defendant knew, it was the target of an investigation by the U.S. DOJ, had more than $5 million seized by the FBI, received a default notice from its primary lender (Zions), and had one of its largest suppliers come under investigation for an E-coli scare that resulted in dozens of containers - that were on the water and in transit - to be held from their final destinations.

---

[2] As noted below, Interrogatory No. 3 actually combines five separate interrogatories resulting in a total of twelve interrogatories.

Defendant objects to Interrogatory No. 1[i] on the same grounds as set forth above in response to Request Nos. 2[ii] and [iii], which are incorporated herein. Specifically, Defendant objects to Interrogatory No. 1[i] on the grounds that it falsely implies that Defendant "sought to learn the reasons for the FBI RAID" and/or "the sources through which the FBI had obtained their information." Defendant further objects to Interrogatory No. 1[i] to the extent it seeks documents during the "Relevant Time Period" unilaterally established by Plaintiff. First, based on the language of Interrogatory No. 1[i] any information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid. Second, any information dated after October 12, 2012 is privileged with regards to the requested information. Further, the request is objectionable because why the FBI raided Defendant is not relevant to the parties' claims or defenses. Without waiving its objection to Interrogatory No. 1[i], between the date of the FBI Raid (October 10, 2012) and Barrick's termination, Defendant did not seek to learn the reasons for the FBI Raid or to learn the potential sources through which the FBI had obtained their information.

Defendant objects to Interrogatory No. 1[ii] on the same grounds as set forth in response to Request No 2[iv] above. Specifically, Defendant objects to Interrogatory No. 1[ii] on the grounds that it falsely implies Defendant sought to "confirm or eliminate the possibility that employees or other agents of Defendant had provided information to the FBI prior to the raid." It falsely assumes Defendant undertook such efforts, when it had no reason to do so. Defendant further objects to Interrogatory No. 1[ii] on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. Defendant further objects to Interrogatory No. 1[ii] to the extent it seeks documents during the "Relevant Time Period" unilaterally established by

Plaintiff. First, based on the language of Interrogatory No. 1[ii] any information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid. Second, any information dated after October 12, 2012 is privileged information and/or work product, assuming Defendant sought to confirm whether an employee had provided information to the FBI. Such information was not relevant. Without waiving the foregoing objections, Defendant affirmatively asserts that between the date of the FBI Raid (October 10, 2012) and Barrick's termination, it did not seek to confirm or eliminate the possibility that employees or other agents of Defendant had provided information to the FBI prior to the raid. Once the FBI raided Defendant's offices, Defendant was focused on salvaging its business to avoid having to shut down its business entirely.

Defendant objects to Interrogatory No. 1[iii] on the grounds that it falsely implies that it "knew or otherwise became aware of the reasons for the FBI Raid." Defendant also objects to Interrogatory No. 1[iii] because it is not limited to the relevant time period – that is the period between the FBI Raid (October 10, 2012) and Barrick's termination (November 14, 2012). Defendant had no knowledge of the FBI Raid until October 10, 2012. And, what it "otherwise became aware of" after the FBI Raid is either privileged or not relevant to the parties' claims or defenses. Interrogatory No. 1[iii] is also objectionable because it seeks to invade the attorney-client privilege and work-product doctrine. Without waiving any of the foregoing objections, Defendant did not become aware of the reasons for the FBI Raid before Barrick's termination on November 14, 2012. In fact, Defendant never became aware of the reasons for the FBI Raid. At no time after the FBI Raid did Defendant communicate with the FBI about the reasons for the raid, and the FBI never offered any reason.

Defendant objects to Interrogatory No. 1[iv] on the grounds that if falsely implies that Defendant "knew or otherwise became aware in regards to the sources through which the FBI obtained their information." First, Interrogatory No. 1[iv] is vague and ambiguous as it relates to the term "sources" and "information." What does Plaintiff mean by "sources?" To what "information" is Plaintiff referring? As of October 10, 2012, the FBI had virtually all of Defendant's business records, both physically and electronically. The FBI obtained this information through the search warrants served on Defendant on October 10, 2012. Defendant further objects to Interrogatory No. 1[iv] on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. Defendant further objects to Interrogatory No. 1[iv] to the extent it seeks documents during the "Relevant Time Period" unilaterally established by Plaintiff. First, based on the language of Interrogatory No. 1[iv] any information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid. Second, any information dated after October 12, 2012 is privileged information and/or work-product.

Defendant objects to Interrogatory No. 1[v] to the extent that it implies that Defendant knew or suspected at the time of Barrick's termination whether an employee or agent had provided information to the FBI. Defendant further objects to Interrogatory No. 1[v] on the grounds it is vague and ambiguous with regards to the term "suspected" or "information." It is also vague and ambiguous as to time, in that it asks for information both before and after the FBI Raid. Interrogatory No. 1[v] is objectionable to the extent it seeks documents during the "Relevant Time Period" unilaterally established by Plaintiff. Based on the language of Interrogatory No. 1[v] any information dated before October 10, 2012 would not exist because Defendant did not know about the FBI Raid, hence it had nothing to "suspect." Further, after the

FBI Raid, the FBI had virtually all of Defendant's business records, both physically and electronically. The FBI obtained this information through the search warrants served on Defendant on October 10, 2012. Defendant further objects to Interrogatory No. 1[v] on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. Without waiving the foregoing objections, Defendant affirmatively asserts that it neither knew nor suspected at the time of Barrick's termination that an employee or agent had provided information to the FBI. Although it may have been reasonable to assume the FBI obtained information from an employee of Defendant, Defendant did not suspect an employee or agent was culpable.

**INTERROGATORY NO. 2:**

Please describe, in detail, the process through which You identified which employees would be terminated, hours reduced, or compensation otherwise cut, as part of the "reduction of force" as alleged in YOUR Motion for Summary Judgment.

**RESPONSE OF DEFENDANT**

Defendant objects to Interrogatory No. 2 on the grounds it is overly broad, unduly burdensome, vague and ambiguous and exceeds the limits agreed to and imposed by the Court pursuant to the Scheduling Order [Dkt. 96]. When combined with Interrogatory Nos. 1, 3[3] and 4, Plaintiff has exceeded the limit imposed by the Court by eight interrogatories. Defendant also objects to Interrogatory No. 2 on the grounds that the term "process" is vague and ambiguous and invades the attorney-client privilege and work-product doctrine. Without waiving the

---

[3] As noted below, Interrogatory No. 3 actually combines five separate interrogatories resulting in a total of twelve interrogatories.

foregoing, Defendant responds to Interrogatory No. 2 by incorporating by reference its Motion

for Summary Judgment, the Declarations of Steven Johnson and Darin Parker, and the

documents produced by Defendant in its initial disclosures and in response to these Discovery

Requests, which set forth the manner in which Defendant exercised its RIF in November, 2012.

### INTERROGATORY NO. 3:

[i] Please describe in detail the process through which You learned that Relator Brandon

Barrick had provided information to the FBI or other government agent about the conduct and

actions of Defendant including, but not limited to: [ii] the first time any person, or any officer,

employee or other agent of Defendant, posited the possibility that Brandon Barrick provided

information to the FBI or other government agent either prior to or after the FBI RAID; [iii] any

and all discussions of this topic of Brandon Barrick providing information to the FBI or other

government agent, or related matters; [iv] the process through which a conclusion was reached

confirming that Brandon Barrick had cooperated with the FBI or other government agent in

regards to the conduct and actions of Defendant, including a description of all document analysis

or forensic testing that confirmed the same.

[v] Please include in your description the actual dates or time frame that this scenario

(Relator Brandon Barrick's cooperation) was first suggested as a possibility and the dates

thereafter in which any corroborating evidence was sought and/or obtained.

### RESPONSE OF DEFENDANT

Defendant objects to Interrogatory No. 3 in its entirety on the grounds that it is overly

broad, unduly burdensome, vague, ambiguous and exceeds the limits agreed to and imposed by

the Court pursuant to the Scheduling Order [Dkt. 96]. Interrogatory No. 3 actually consists of

five (5) separate interrogatories, each of which seeks different information. When combined with Interrogatory Nos. 1, 2, and 4, Plaintiff has exceeded the limit imposed by the Court by eight interrogatories.

Defendant further objects to Interrogatory No. 3, in its entirety, on the grounds that it seeks to invade the attorney-client privilege and work-product doctrine. At the time of Plaintiff's termination, as far as Defendant knew, it was the target of an investigation by the U.S. DOJ, had more than $5 million seized by the FBI, received a default notice from its primary lender (Zions Bank), and had one of its largest suppliers come under investigation for an E-coli scare that resulted in dozens of containers - that were on the water and in transit - to be held from their final destinations.

Defendant objects to Interrogatory No. 3 on the grounds it is overly broad and unduly burdensome in that the information sought is included in the Motion for Summary Judgment, the Declarations of Steven Johnson and Darin Parker, and the documents produced as part of Defendant's initial disclosures.

Interrogatory No. 3 is also vague and ambiguous with regards to the term "process" and "conduct and actions of Defendant." By its very nature, the Interrogatory seeks information relating to Defendant's work-product regarding an on-going investigation being undertaken by the FBI and U.S. DOJ. Such information is privileged and confidential.

Without waiving the forgoing objections, Defendant responds to the five separate interrogatories set forth in Interrogatory No. 3 as follows:

[i] With regards to Interrogatory 3[i], Defendant did not learn that Barrick was the "Relator" until October 20, 2014, over two years after the FBI Raid, which is the day Amanda

Berndt (Assistant U.S. Attorney) sent a letter to Defendant's counsel wherein she disclosed that Barrick had filed a *qui tam* action. Ms. Berndt's email and letter represents the first time Defendant became aware of (a) the *qui tam* case and (b) Barrick's participation as the Relator. (*See* Ms. Berndt's letter produced herewith as Bates No. PMI00000927-PMI00000928)

With regards to Interrogatory No. 3**[ii],** Defendant did not learn that Barrick had communicated with the FBI until October 11, 2013, a year after the FBI Raid. Defendant discovered while doing a search of the computer used by Barrick during his employment that he had email communications with Crystal Bowen that predated the FBI Raid. Prior to October 11, 2013, Defendant had no knowledge of these communications or what, if any, documents or information Barrick had provided to the FBI. To this date, Defendant has no knowledge of what, if any, documents or information Barrick provided to the FBI. On October 10, 2012, the FBI seized virtually all of Defendant's physical and electronic documents and information following the execution of search warrants upon Defendant's office premises and off-site storage units. At that point, whether Barrick had provided documents or information to the FBI was not relevant to Defendant.

With regards to Interrogatory No. 3**[iii],** Defendant objects to this interrogatory on the basis that it falsely assumes Defendant had discussions regarding Mr. Barrick providing information to the FBI or other government agent, or related matters. The interrogatory is objectionable because it is not limited to the relevant time period – from October 10, 2012 until Barrick's termination. Whether Defendant had discussions thereafter is not relevant to the parties' claims or defenses. Defendant did not have knowledge that Barrick had provided any information to the FBI prior to his termination. As noted above, Defendant did not learn that

Barrick may have provided information to the FBI until October 11, 2013 or that he had filed this *qui tam* action and was the Relator until October 20, 2014.

With regards to Interrogatory No. 3 **[iv]** Defendant reincorporates the objections set forth in response to Interrogatory No. 3[i], [ii], and [iii] above.

With regards to Interrogatory No. 3**[v]** Defendant objects on the grounds that it falsely implies certain facts and circumstances that never existed and/or came to be. Defendant further objects on the grounds set forth in its responses to Interrogatory No. 3[i-iv] and incorporates those responses herein.

### INTERROGATORY NO. 4:

For each Request for Admission below to which YOU provide a response that is anything other than an unequivocal admission, please state, in detail, the facts and analysis upon which YOU base YOUR answer.

### RESPONSE OF DEFENDANT

Defendant objects to Interrogatory No. 4 on the grounds that it is repetitive. Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the Defendant is already required to explain its denial. *See* Fed.R.Civ.P. 36(a)(4).

### REQUEST FOR ADMISSION

### REQUEST NO. 1:

Admit that on multiple occasions prior to the FBI RAID, YOU engaged in conduct which resulted in or caused false statements being made to USDA inspectors.

**RESPONSE OF DEFENDANT**

Defendant objects to Request No. 1 on the grounds that it is not relevant to the parties' claims and defenses. The Court has dismissed Plaintiff's claims for violation of the False Claims Act. (*See* Memorandum Decision [Dkt 70].) Hence, whether Defendant made a false statement to a USDA inspector has no bearing on the outcome of Plaintiff's retaliation claim. Defendant further objects on the grounds that it is over broad and unduly burdensome and not limited to the relevant time period.

**REQUEST NO. 2:**

Admit that subsequent to the FBI RAID and prior to TERMINATION, you were aware that the FBI was investigating criminal conduct by YOU.

**RESPONSE OF DEFENDANT**

Defendant objects to Request No. 2 on the grounds that it is not relevant to the parties' claims and defenses. The Court has dismissed Plaintiff's claims for violation of the False Claims Act. (*See* Memorandum Decision [Dkt 70].) Hence, whether the FBI was investigating criminal activity by Defendant has no bearing on the outcome of Plaintiff's retaliation claim. Defendant further objects on the grounds that it is overly broad and unduly burdensome and not limited to the relevant time period – October 10, 2012 through November 14, 2012. Without waiving the foregoing objections, Defendant denies that it was aware that the FBI was investigating criminal conduct of Defendant prior to Barrick's termination.

**REQUEST NO. 3:**

Admit that prior to TERMINATION, YOU had uncovered information or other evidence which led you to hold, at the very least, a strong suspicion that Brandon Barrick had provided information to the FBI or other government agent.

**RESPONSE OF DEFENDANT**

Deny. As noted herein, at no time prior to Barrick's termination had Defendant uncovered evidence which revealed that Barrick had provided information to the FBI or government. Defendant did not learn that Barrick had communicated with the FBI until October 11, 2013, over a year after the FBI raid and eleven months after his termination.

**REQUEST NO. 4:**

Admit that subsequent to the FBI RAID and prior to TERMINATION, the only employee in YOUR Salt Lake City office that declined YOUR request to participate in an interview by YOU was Brandon Barrick.

**RESPONSE OF DEFENDANT**

Deny. In addition to Mr. Barrick, employee Mark Flanders declined to be interviewed and notified Defendant he would be consulting with his own counsel. Mr. Barrick also informed Defendant that he would not be interviewed by Defendant's counsel and that he was meeting with his own counsel. (*See* Documents produced concurrently herewith.)

DATED this 12th day of April, 2017.

/s/ Mark R. Gaylord
Mark R. Gaylord, Esq.
Tyler M. Hawkins, Esq.
BALLARD SPAHR LLP
*Attorneys for Defendant, Parker-Migliorini
International, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing DEFENDANT'S

OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUEST FOR DOCUMENTS,

INTERROGATORIES, AND REQUESTS FOR ADMISSION was served to the following this

12th day of April, 2017, in the manner set forth below:

[  ] Through the CM/ECF System for the U.S. District Court

[  ] Hand Delivery

[ X ] U.S. Mail, postage prepaid

[ X ] E-mail:   jim@brownbradshaw.com; mark@brownbradshaw.com;
ann@brownbradshaw.com; Robert@thesaltlakelawyers.com;
amanda.berndt@usdoj.gov; sandra.steinvoort@usdoj.gov;
saltlakedocketclerk@ballardspahr.com

        James C. Bradshaw, Esq.
        Mark R. Moffat, Esq.
        Ann Marie Taliaferro, Esq.
        BROWN, BRADSHAW & MOFFATT, L.L.P.
        10 West Broadway, Suite 210
        Salt Lake City, UT 84101

        Robert B. Cummings, Esq.
        THE SALT LAKE LAWYERS
        10 Exchange Place, Suite 622
        Salt Lake City, UT 84111

        Amanda A. Berndt, Esq.
        Sandra L. Steinvoort, Esq.
        U.S. ATTORNEY'S OFFICE
        185 South State Street, #300
        Salt Lake City, UT 84111-1506

                /s/ Trista Lawson