IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. BRANDON BARRICK,<br><br>Plaintiff,<br><br>v.<br><br>PARKER-MIGLIORINI INTERNATIONAL, LLC, and JOHN AND JANE DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:12-cv-381-DB<br><br>District Judge Dee Benson |

Before the court is Defendant's Motion for Summary Judgment. (Dkt. No. 91.) The

motion has been fully briefed by the parties, and the court has considered the facts and

arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District

Court for the District of Utah Rules of Practice, the court elects to determine the motion on the

basis of the written memoranda and finds that oral argument would not be helpful or necessary.

DUCivR 7-1(f).

## BACKGROUND

Plaintiff Brandon Barrick ("Barrick") was employed by Defendant Parker-Migliorini

International, LLC ("PMI") as a Senior Financial Analyst. (Declaration of Brandon Barrick, Dkt.

No. 118-5, ¶ 3.) In that position, Barrick became aware of PMI's business practice of illegally

shipping U.S. beef to Japan by first shipping it through third parties in Costa Rica and Honduras

where it was repackaged for shipment to Japan. (*Id.* ¶ 8.) Barrick also discovered that PMI was

designating and submitting for inspection shipments of beef for Moldova when the beef was, in

1

fact, already sold to customers in China. (*Id.* ¶ 11.) The beef was exported to Hong Kong where it was later smuggled into China. (*Id.*) In 2012, Barrick became concerned that he might be criminally liable for his participation in the shipping scheme and contacted an attorney. (*Id.* ¶ 17.)

On April 26, 2012, Barrick filed a sealed Complaint setting forth PMI's business practices. (*Id.* ¶ 19.) The FBI then began to investigate PMI, and Barrick assisted in the investigation. (*Id.* ¶ 19-20.) Barrick wore a "hidden recording device" during conversations with PMI's CFO Steven Johnson ("Johnson") to obtain detailed information regarding PMI's business practices. (*Id.* ¶ 20.) Barrick also downloaded PMI's entire server to a thumb drive from his work computer and provided it to the FBI. (*Id.* ¶ 23.) On October 9, 2012, Barrick used his work computer to create a map of PMI's Salt Lake office for FBI use. (*Id.* ¶ 25.)

On October 10, 2012, the FBI executed a search warrant of PMI's Salt Lake City office. (*Id.* ¶ 26.) During the inspection, all employees were instructed to remain in the conference room while FBI agents entered and exited using Barrick's badge; no other badges were used for entry and exit during that time period. (*Id.* ¶¶ 27-30.) During the execution of the search warrant, the FBI conducted interviews with employees, including Barrick, "so as not to raise suspicion." (*Id.* ¶ 31.) While questioning CFO Johnson, the FBI used "specific details" Johnson had divulged to Barrick in the conversations Barrick recorded for the FBI. (*Id.* at ¶ 34.)

The next day, October 11, 2012, PMI attempted to interview all employees who had been questioned by the FBI. (Dkt. No. 118-4.) When Barrick was approached about being interviewed by the company, he stated that he was represented by an attorney and could not answer any questions without his attorney present. (*Id.*) A few days later, the company reached out to

Barrick's attorney, Mark R. Moffat. (Dkt. No. 118-7, ¶ 2.) The company conveyed the request

that Barrick submit to an interview and informed Mr. Moffat that "a refusal to be interviewed

would be viewed by [PMI] as insubordination" that "could result in Barrick being fired from

[PMI]." (*Id.* ¶¶ 4-6.)

On October 11, 2012, PMI also hired an IT company to conduct a forensic analysis of

PMI's computers and servers (including Barrick's work computer) to determine what documents

had been seized or accessed by the FBI. (*Id.* ¶ 35.)  As part of the execution of the search

warrant, the FBI seized approximately six million dollars of PMI's assets, which affected PMI's

"ability to undertake business in the ordinary course…." (*Id.* ¶ 18.) Citing decreasing revenue

due to an E. Coli scare and the FBI's investigation and seizure of assets, the company reduced its

workforce on November 14, 2012. (*Id.* ¶¶ 18, 19, 27.) The parties dispute the number of

employees affected by the layoff, but at least six employees (including Barrick and his brother)

were laid off, of the approximately 49 employees PMI employed domestically. (*Id.* ¶¶ 23-24,

Dkt. No. 118-6, ¶ 11.)

As a result of the FBI's investigation, on March 28, 2014, PMI pleaded guilty to

providing false information, a misdemeanor, pursuant to 21 U.S.C. § 611(b)(5). (Second

Amended Complaint, Dkt. No. 84, ¶ 7.) On April 1, 2014, PMI was ordered to pay a one million

dollar fine to the United States government. (*Id.* ¶ 8.) On February 19, 2015, pursuant to 31

U.S.C. § 3730(b)(4)(B), the United States filed a Notice of Election to Decline Intervention in

this matter. (Dkt. No. 19.) Barrick continued to pursue the action on behalf of the government

pursuant to 31 U.S.C. § 3730(b)(4).

On December 22, 2015, the court granted Defendants' Motion to Dismiss Barrick's First Amended Complaint. (Dkt. No. 47.) The court dismissed Barrick's reverse false claim and conspiracy claim under the False Claims Act ("FCA") without prejudice for failure to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* at 5.) Additionally, the court dismissed Barrick's FCA retaliation claim because Barrick failed to allege that Defendants were aware of Barrick's protected FCA activities. (*Id.* at 13.)

Barrick did not request leave to amend the First Amended Complaint. Therefore, on December 29, 2015, the Clerk of the Court entered a judgment and closed the case. (Dkt. No. 48.) On January 18, 2016, Barrick filed a Motion to Reopen Case and requested time to file a motion for leave to amend the First Amended Complaint. (Dkt. No. 49.) On February 1, 2016, the court reopened the case to permit Barrick to request leave to amend. (Dkt. No. 54.)

On February 14, 2016, Barrick filed a Second Amended Complaint in conjunction with a motion requesting leave to amend. (Dkt. No. 55.) On May 25, 2016, the court denied in part Barrick's Motion for Leave to Amend Complaint, finding that amendment of his *qui tam* claims would be futile, but granting Barrick leave to file the portion of the Second Amended Complaint pursuant to the FCA anti-retaliation provision, 31 U.S.C. §3730(h). (Dkt. No. 70.) Barrick appealed that decision. (Dkt. No.76.)

On December 21, 2016, PMI filed a Motion for Summary Judgment on Barrick's remaining claim for FCA retaliation. (Dkt. No. 91.) The parties did not actively litigate this case during the pendency of Barrick's appeal of this court's denial of leave to amend his *qui tam* claims. On December 28, 2017, the Tenth Circuit Court of Appeals affirmed the denial of leave to amend. (Dkt. No. 103.) On October 1, 2018, the United States Supreme Court denied

certiorari. (Dkt. No. 105.) On July 3, 2019, Barrick filed a motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(d). (Dkt. No. 112.) The court denied that motion on September 5, 2019, ordering Barrick to file his response to the Motion for Summary Judgment within 30 days. (Dkt. No. 117.)

## DISCUSSION

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

The FCA's anti-retaliation provision, § 3730(h)(1), provides relief to any employee who:

is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA].

31 U.S.C. § 3730(h)(1). To establish a claim under § 3730(h), a whistleblower employee must show: "(1) the employee engaged in protected activity; (2) the employer received notice of the employee's protected activity; and (3) the employer discriminated against or discharged the employee for engaging in protected activity." *United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2015 WL 6801829, at *7 (D. Kan. Nov. 5, 2015).

To establish employer notice of protected activity, an employee must show "'facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a qui tam action or assisting in an FCA action brought by the government.'" *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 729 (10th Cir. 2006), abrogated on other grounds by *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 203 L. Ed. 2d 791 (2019) (citations omitted); *McBride v. Peak wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012). "Notice may be provided in a number of ways: for example, by informing the employer of 'illegal activities' that would constitute fraud on the United States, . . . by warning the employer of regulatory noncompliance and false reporting of information to a government agency, . . . or by explicitly informing the employer of an FCA violation." *McBride*, 688 F.3d at 704 (citations omitted).

After Barrick filed his original complaint under seal, the FBI initiated an investigation into PMI's business. (Dkt. No. 118-5, ¶ 19.) Barrick aided the FBI's investigation, including wearing a "hidden recording device" during conversations with PMI's CFO, Johnson. (*Id.* at ¶ 20.) Barrick also used his work computer to download PMI's entire server to a thumb drive for the FBI and to create a map of PMI's Salt Lake office for FBI use. (*Id.* ¶¶ 23, 25.) Days later, his computer was forensically analyzed by the company. (*Id.* ¶ 35.)

When the FBI executed its search warrant, FBI agents used Barrick's security badge and other badges were not used for entry and exit during that time period. (*Id.* ¶¶ 27-30.) During the FBI's investigation, the FBI interrogated Johnson about "specific details he had divulged to [Barrick] in the conversations [Barrick] recorded." (*Id.* at ¶ 34.)

When Barrick was approached by PMI about being interviewed by the company, he stated that he was represented by an attorney and could not answer any questions without his attorney present. (Dkt. No. 118-4.) When the company reached out to Barrick's attorney, PMI informed him that "a refusal to be interviewed would be viewed by [PMI] as "insubordination" that "could result in Barrick being fired from [PMI]." (Dkt. No. 118-7, ¶¶ 4-6.) Approximately a month later, Barrick was laid off. (Dkt. No. 118-6, ¶ 11.)

The parties do not dispute that Barrick engaged in protected activity, and they agree that Barrick was laid off approximately one month after the FBI executed its search warrant with Barrick's assistance. Viewing the facts in the light most favorable to Barrick, the court finds that a reasonable jury could conclude that PMI had been put on notice of Barrick's participation in the FBI's FCA investigation and included Barrick in the layoff because of his participation.

Although Barrick and the FBI did not explicitly identify Barrick as the relator, a jury could find that PMI had notice of Barrick's participation through the forensic analysis of his computer, the FBI's use of his badge and map, the FBI's use of details from Barrick's recorded conversations while questioning Johnson, and Barrick's refusal to participate in an interview with the company without his attorney present. A reasonable jury could also find that Barrick was included in the layoff because of his assistance in the FBI's FCA investigation, especially in light of the timing of his termination and PMI's threat that refusal to participate in an interview could be viewed as insubordination and could result in his termination. Accordingly, PMI's Motion for Summary judgment is appropriately denied.

## <u>CONCLUSION</u>

For the foregoing reasons, PMI's Motion for Summary Judgment is DENIED.

DATED this 31st day of January, 2020.

BY THE COURT:

Dee Benson
United States District Judge