IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRANDON BARRICK,<br><br>　　　　Plaintiff/Relator,<br><br>v.<br><br>PARKER-MIGLIORINI INTERNATIONAL, LLC and JOHN AND JANE DOES 1–10,<br><br>　　　　Defendants. | **ORDER DENYING MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF OR REFERENCE TO FBI 302 REPORTS AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:12-cv-00381-JNP-CMR<br><br>District Judge Jill N. Parrish |

　　　Before the court is a Motion *in Limine* to Exclude Evidence of or Reference to FBI 302 Reports and Supporting Memorandum (the "Motion") filed by Defendant Parker-Migliorini International, LLC ("PMI"). ECF No. 281. The court has determined that oral argument would not be beneficial in deciding the Motion, in part because some of the issues presented in the Motion will need to be addressed if and when they arise at trial. Accordingly, the court is deciding the Motion on the written memoranda and will not hear oral argument on the Motion. The parties may raise objections to the evidence at issue as it arises during trial. The parties may also propose limiting instructions pursuant to the court's proposed Preliminary Instruction No. 11 (ECF No. 282-1 at 12), depending upon the purpose for which the evidence is admitted at trial. After

considering the Motion, supporting memorandum, and memorandum in opposition,[1] the court denies the Motion.

## BACKGROUND

On October 10, 2012, the Federal Bureau of Investigation ("FBI") raided PMI's offices in Salt Lake City, Utah. During the raid, Special Agent Crystal Bowen ("SA Bowen") interviewed PMI's Chief Financial Officer, Steven Johnson ("Johnson"). SA Bowen took handwritten notes as she interviewed Johnson. Five days later, SA Bowen transcribed her notes from her interview of Johnson into an FBI 302 Report (the "302 Report").

PMI requests that the court preclude Plaintiff Brandon Barrick ("Plaintiff") "from offering evidence of or reference to any FBI 302 Report, specifically the FBI-302 Report of Special Agent Bowen's interview with Steven Johnson." ECF No. 281 at 2.[2] PMI argues that such evidence is hearsay under Federal Rule of Evidence 801 to which no exception applies, and that even if there is an applicable hearsay exception, the evidence must be excluded for being unduly prejudicial under Federal Rule of Evidence 403.

---

[1] The court notes that PMI also filed a Response to Plaintiff's Memorandum in Opposition to Defendant's Motion *in Limine* to Exclude Evidence of or Reference to FBI 302 Reports (the "Reply"). ECF No. 286. As expressly stated in the Trial Order in reference to motions *in limine*, following the filing of opposition memoranda, "[t]here will be no reply." ECF No. 151 at 4. In its Reply, PMI responds to Plaintiff's contention that the Motion could have been filed earlier. Although the court is displeased with PMI's timing, it nevertheless considers the substance of the Motion.

[2] Although PMI requests that the court preclude evidence of "any FBI 302 Report," PMI and Plaintiff only raise arguments related to SA Bowen's 302 Report on her interview of Johnson. Absent briefing on any other FBI 302 Reports, the court will not rule on their admissibility and confines its ruling to SA Bowen's 302 Report on her interview of Johnson.

Plaintiff first responds that PMI's Motion is untimely, since it was filed the afternoon before trial and weeks after the court's June 1, 2021 deadline for filing motions *in limine*. Plaintiff argues that PMI has had the 302 Report from SA Bowen's interview with Johnson for years, Plaintiff indicated that he would introduce the 302 Report at trial in his pretrial disclosures on May 11, 2021, and SA Bowen was deposed on June 16, 2021 regarding subjects included in her 302 Report. Plaintiff then argues that the 302 Report is not hearsay because it is not being offered to prove the truth of the matters asserted therein. Alternatively, Plaintiff argues that the 302 Report falls under several exceptions to the hearsay rule. Finally, Plaintiff argues that the probative value of the 302 Report is not substantially outweighed by the danger of unfair prejudice.

## ANALYSIS

PMI's Motion has been filed long after the court's June 1, 2021 deadline for filing motions *in limine*. Indeed, the motion was not filed until the afternoon following jury selection and just one business day before the parties are to make their opening statements and begin their presentation of evidence. The court is quite displeased with PMI's timing in filing this Motion, especially since it appears that this Motion could have been filed earlier. However, the court recognizes that the parties will benefit from understanding the court's views on the issues presented in advance of trial and that a ruling on the order may obviate the need for long sidebars in front of the jury. Therefore, the court will consider PMI's Motion even though it was not timely filed. Turning to the substance of the Motion, the court denies the Motion under Rules 801 and 403.

**I.     Hearsay**

Hearsay is an out-of-court-statement offered "to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). The 302 Report presents two levels of potential hearsay: 1) Johnson's statements to SA Bowen, which are reflected in the 302 Report; and 2) the 302 Report

3

itself. "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." FED. R. EVID. 805. Upon consideration of each potential hearsay level, the court will not exclude the 302 Report as inadmissible hearsay.

  A.  Johnson's Statements to SA Bowen

    1)  Not Offered for the Truth of the Matter

While it is not contested that Johnson's statements were made out of court, Plaintiff argues that several of Johnson's statements within the 302 Report are not hearsay because they are not offered to prove the truth of the matter asserted. Rather, Plaintiff argues that Johnson's statements regarding his lack of awareness of the United States Department of Agriculture ("USDA") inspection processes and how the meat load final destinations were changed after the inspections, as well as PMI's use of an entity so that its sales and exports to Japan "could not be tracked back to [PMI]," are offered to show that PMI had notice that Plaintiff had informed the FBI of PMI's allegedly fraudulent scheme. Plaintiff further argues that Johnson's statements regarding the e-coli-related recall of Canadian meat that PMI had purchased are also not offered for the truth of the matter asserted. Instead, Plaintiff contends that the statements will be offered to prove when the e-coli issue arose and whether PMI was financially impacted by the recall, both of which pertain to one of PMI's cited reasons for its company-wide reduction in force.

It does not appear that these statements will be offered for their truth, but rather to prove whether PMI had notice of Plaintiff's engagement in protected activity and whether Plaintiff's employment was terminated because of his protected activity or as part of a legitimate, non-discriminatory reduction in force. Whether PMI had notice of Plaintiff's engagement in a protected activity and terminated Plaintiff's employment because of his protected activity are essential

elements of Plaintiff's retaliation claim. Because Johnson's statements will not be offered for their truth, but rather as evidence of notice or timing, they are not inadmissible hearsay.

Plaintiff also asserts that Johnson's statements about sales to China and Japan being "a regular business practice in the industry" and "that he understood that [PMI's] actions relating to the meat product transportation and eventual sale in Japan and China was illegal but that it was a different thought process and it would take time to wrap his mind around it" (ECF No. 285 at 5) are not offered for the truth of the matter asserted but rather "to provide information about Johnson's thinking about the sales at the time he was interviewed." ECF No. 284 at 4. Plaintiff's explanation is vague and does not persuade the court that these statements would not be offered for the truth of the matter asserted. Nevertheless, as explained in the following section, the court still finds that these statements are admissible as statements of an opposing party.

Finally, Plaintiff argues that Johnson's statement that he would continue to cooperate with the FBI is not offered for the truth of the matter asserted but rather to show Johnson's understanding that the FBI's investigation would continue following the interview. Plaintiff does not clearly delineate the relevance of Johnson's understanding on this point. However, to the extent that Plaintiff intends to offer this evidence to support his claim that PMI terminated Plaintiff's employment because of his protected activity, the evidence could be relevant for that purpose. *See United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) ("[T]he degree of materiality and probativity necessary for evidence to be relevant is 'minimal' and must only provide a 'fact-finder with a basis for making some inference, or chain of inferences.'" (citation omitted)).

    2)    Opposing Party Statement

Plaintiff also asserts that Johnson's statements are not hearsay because they qualify as opposing party statements. *See* FED. R. EVID. 801(d)(2). Rule 801(d)(2) provides that an opposing

5

party's statement is not hearsay if any of the conditions (listed in the disjunctive) is satisfied. PMI contends that "a statement of a party-opponent is *only* an admission if the party actually made the statement or adopted it as true" (ECF No. 281 at 3 (emphasis added)). But the conditions on which PMI focuses are but two of five available options by which a statement offered against an opposing party is removed from the operation of the hearsay rule. It is correct that a statement is not hearsay if it is offered against an opposing party and was made by the party or adopted by the party as true. *Id.* 801(d)(2)(A)–(B). But a statement that is offered against an opposing party is also not hearsay if it is "made by a person whom the party authorized to make a statement on the subject," or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *Id.* 801(d)(2)(C)–(D). Here, the statements at issue were made by Johnson, PMI's Chief Financial Officer. As a high-ranking officer of PMI, Johnson likely had at least implied authority to make the statements that he made to SA Bowen. And even if he had no authority to speak to SA Bowen, he was an employee of PMI and was speaking to SA Bowen about matters within the scope of that employment relationship—PMI's exporting practices—while still employed by PMI.

In summary, the court concludes that Johnson's statements to SA Bowen are not hearsay, either because they are not offered for the truth of the matter asserted, *see* FED. R. EVID. 801(c)(2), or because they are opposing party statements, *see id.* 801(d)(2)(C)–(D).

B. The 302 Report

It is undisputed that the 302 Report is an out-of-court statement. To the extent that the 302 Report is not offered to prove the truth of the matters asserted therein, then it does not present a hearsay issue. But even if the 302 Report were offered to prove the truth of the matters asserted within it, the 302 Report would be admissible under multiple hearsay exceptions.

6

1)  Writing Used to Refresh Witness's Memory or Recorded Recollection

Depending upon SA Bowen's trial testimony, it is possible that the 302 Report could qualify as either a writing used to refresh a witness's testimony under Federal Rule of Evidence 612 or a recorded recollection under Rule 803(5). The court defers ruling on the specifics of this issue until it arises at trial. With respect to the recorded recollection hearsay exception under Rule 803(5), PMI argues that the five-day delay between SA Bowen's interview of Johnson and her preparation of the 302 Report is "not sufficiently recent to be 'fresh in [her] memory'" (ECF No. 281 at 4–5). But PMI's argument in this regard is unsupported by any authority or evidence. And the Advisory Committee's Note to Rule 803(5) makes plain that "[n]o attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." FED. R. EVID. 803(5) advisory committee notes to 1972 proposed rules. Here, the court finds no reason to believe that the five-day delay between the interview and the preparation of the 302 Report would compromise SA Bowen's recollection or the reliability of the Report's contents.

2)  Public Record

Even if the 302 Report were inadmissible under Rules 612 or 803(5), it may still be admissible as a public record under Rule 803(8). "A record or statement of a public office" is admissible if it "sets out . . . (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8)(A)(ii), (B). Here, the 302 Report is a "record or statement of a public office." *See United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086–87 (9th Cir. 2000) ("[D]istrict courts should admit such law-enforcement reports, if at all, only under the public-

records exception contained in Federal Rule of Evidence 803(8)." (citation omitted)). Additionally, SA Bowen observed Johnson's statements during her interview with him, and the court finds that she had a legal duty to report her observations in her 302 Report. *See United States v. Nathan*, 816 F.2d 230, 232 n.1 (6th Cir. 1987) ("An FBI 302 is a form routinely used to memorialize [*sic*] an FBI interview of a witness."). Finally, although SA Bowen's observations were made during the course of a criminal investigation, the instant matter is a civil action involving an employment claim; it is only tangentially related to the criminal investigation and is not being offered in a criminal case. *See Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986) (finding no error in a district court's admission in a civil case of FBI reports from a "tangentially related" criminal investigation as a public record under Rule 803(8)).

PMI's only argument related to this hearsay exception is that the 302 Report "lacks trustworthiness." ECF No. 281 at 5. In support, PMI points to the five-day delay between SA Bowen's interview of Johnson and her preparation of the 302 Report, the fact that SA Bowen relied upon her handwritten notes from her interview with Johnson (which were "inevitably incomplete") in preparing the 302 Report, and its contention that SA Bowen's memory is "unquestionably subject to fading, implicit bias, and gaps." *Id.* at 5–6. But PMI offers nothing more than conclusory assertions in support of its position. It is PMI's burden to establish that "the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8)(B). PMI did not meet this burden here. PMI's assertions of untrustworthiness are wholly unsupported by any evidence. As the court previously stated, it does not find the five-day delay between the interview and the preparation of the 302 Report to be problematic in itself, especially when PMI has presented no evidence or authority to support that a delay of that length did or even could impact

8

SA Bowen's ability to prepare the report. PMI has also failed to present any evidence that SA Bowen's notes were incomplete or untrustworthy. To the contrary, there is an "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Bradford Trust Co.,* 805 F.2d at 54 (citation omitted). PMI has presented no evidence to overcome that assumption here, and the court finds no basis upon which to deem SA Bowen's handwritten notes or her 302 Report untrustworthy under Rule 803(8)(B).[3]

C. Residual Exception

Under Rule 807, "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804" if:

> (1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

FED. R. EVID. 807(a). "[R]easonable notice" must also be given to the adverse party in accordance with Rule 807(b). The residual hearsay exception should be used "only 'in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness

---

[3] Although neither party discussed the applicability of the business records exception under Rule 803(6), the 302 Report may also qualify as a business record for essentially the same reasons that qualify it as a public record. The 302 Report was a record of SA Bowen's interview with Johnson and was made "at or near the time" of the interview; by SA Bowen herself, as "someone with knowledge"; as part of a routine practice; and kept in the regular course of FBI activity. *See* FED. R. EVID. 803(6). Additionally, PMI has failed to show evidence that either "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," and SA Bowen could presumably testify as a qualified witness to each of these elements. *See id.* 803(6)(D)–(E).

and is material, probative and necessary in the interest of justice.'" *United States v. Tome*, 61 F.3d 1446, 1452 (10th Cir. 1995) (citation omitted). Courts "must use caution when admitting evidence under" the residual exception, "for an expansive interpretation of the residual exception would threaten to swallow the entirety of the hearsay rule." *Id.*

Here, even if none of the preceding exceptions to the rule against hearsay apply, the court finds that the 302 Report is admissible under the residual hearsay exception. First, there are sufficient guarantees of the 302 Report's trustworthiness. The 302 Report was prepared by SA Bowen within five days of her interview with Johnson and is based on her contemporaneous handwritten notes. In her deposition, SA Bowen testified that the 302 Report reflects what was said during her interview with Johnson, rather than simply her recollection of the interview (ECF No. 284-2 at 24:17–22). She additionally confirmed that information is not typically provided to interviewees during an interview and that her report contains only what was said during the interview and not her interpretation of what was said (*see, e.g.*, *id.* at 49; 57:7–17; 55:8–11). There is also an "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Bradford Trust Co.,* 805 F.2d at 54 (citation omitted). PMI has failed to produce evidence to overcome this assumption. Second, because the interview took place more than nine years ago and because SA Bowen's memory of the interview is likely not as detailed as the report itself, the court finds that the 302 Report "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Third, PMI has received notice of the 302 Report. And finally, given the passage of time and circumstances of this case, the court finds that "extraordinary circumstances" exist and is satisfied that the 302 Report is material to the issues of notice and causation, is

probative of these issues, and is necessary in the interest of justice given the length of time since the interview and its importance.

## II.     Prejudice

PMI's final argument is that the 302 Report should be excluded because it would be "unduly prejudicial under Federal Rule of Evidence 403." ECF No. 281 at 9. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. District courts have "considerable discretion in performing the Rule 403 balancing test." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001). "However, exclusion of evidence under Rule 403 that is otherwise admissible under the other rules 'is an extraordinary remedy and should be used sparingly.'" *Id.* (citation omitted).

The court will not employ this "extraordinary remedy" here. The court disagrees with PMI's argument that the 302 Report "is not particularly relevant to Plaintiff's retaliation claim under the False Claims Act" because it was prepared in the context of a criminal investigation under the Foreign Corrupt Practices Act. ECF No. 281 at 10. As stated above, the 302 Report is relevant to whether PMI had notice of Plaintiff's engagement in a protected activity and whether PMI terminated Plaintiff's employment because of his engagement in protected activity or for a legitimate, non-discriminatory business reason. Both issues are central elements of Plaintiff's retaliation claim under the False Claims Act. PMI asserts that "Plaintiff will be able to imply to the jury that the 302 [Report] contains information that is somehow inconsistent with PMI's trial testimony," the jury will give undue weight to the 302 Report, the jury could be misled regarding the FBI's role in this lawsuit, and the jury is likely to find SA Bowen's testimony highly credible

because of her position. The court is unpersuaded. PMI can cross-examine SA Bowen about the 302 Report, offer its own evidence at trial, and argue to the jury about the weight to be given to the 302 Report. The court does not find that the probative value of the 302 Report is substantially outweighed by the dangers of unfair prejudice, confusing the issues, or misleading the jury. It accordingly will not exclude the 302 Report under Rule 403.

## CONCLUSION

PMI's Motion *in Limine* to Exclude Evidence of or Reference to FBI 302 Reports and Supporting Memorandum (ECF No. 281) is HEREBY DENIED.

DATED June 27, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge