FILED
2022 MAR 25
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRANDON BARRICK,<br><br>      Plaintiff/Relator,<br><br>v.<br><br>PARKER-MIGLIORINI INTERNATIONAL, LLC and JOHN AND JANE DOES 1–10,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>Case No. 2:12-cv-00381-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court is Defendant Parker-Migliorini International, LLC's ("PMI") Rule 59 Motion for a New Trial (the "Motion"). ECF No. 322. The court has concluded that oral argument on the Motion would not be helpful or necessary and will accordingly decide the Motion on the written memoranda of the parties. *See* DUCivR 7-1(f). Having carefully reviewed the parties' written memoranda and the relevant law, the court DENIES the Motion.

## BACKGROUND

Following a five-day jury trial of Plaintiff Brandon Barrick's ("Mr. Barrick") retaliation claim under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), the jury returned a verdict in favor of Mr. Barrick. The jury found that Mr. Barrick had proven by a preponderance of the evidence that PMI terminated his employment because of his protected activity in violation of the FCA's anti-retaliation provision and that Mr. Barrick had suffered damages as a result of his termination from PMI. The jury awarded Mr. Barrick $125,000.00 in economic damages but did

not award him any non-economic damages. On July 22, 2021, PMI filed the instant Motion under

Federal Rules of Civil Procedure 50(b)[1] and 59(a).

## LEGAL STANDARD

Rule 59(a) provides that a court may "grant a new trial on all or some of the issues . . . after

a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in

federal court." FED. R. CIV. P. 59(a)(1)(A). A motion for a new trial under Rule 59(a) "normally

involves a review of the facts presented at trial, and thus involves the discretion of the trial court."

*Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (citation omitted). Thus,

a district court's ruling on a Rule 59(a) motion is evaluated under an abuse of discretion standard.

*Id.* "[A] new trial may be granted if the district court concludes the 'claimed error substantially

and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217

(10th Cir. 2008) (citation omitted); *see also* FED. R. CIV. P. 61 ("Unless justice requires otherwise,

no error in admitting or excluding evidence—or any other error by the court or a party—is ground

for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors

---

[1] Rule 50(b) provides:

> No later than 28 days after the entry of judgment—or if the motion
> addresses a jury issue not decided by a verdict, no later than 28 days
> after the jury was discharged—the movant may file a renewed
> motion for judgment as a matter of law and may include an
> alternative or joint request for a new trial under Rule 59.

FED. R. CIV. P. 50(b). PMI notes that it has also moved for judgment as a matter of law under Rule
50(a). PMI requests that if the court does not grant its motion for judgment as a matter of law that
the court "order a new trial because the jury's verdict was against the great weight of the evidence
(including damages), the result of errors of law, the inclusion of an erroneous jury instruction, and
misconduct of counsel." ECF No. 322 at 10.

and defects that do not affect any party's substantial rights."). "[I]ssues tried and decided by a jury shall not be lightly set aside." *Kanatser v. Chrysler Corp.*, 199 F.2d 610, 615 (10th Cir. 1952).

## ANALYSIS

PMI argues that the jury verdict "is not supported by the evidence and is contrary to controlling law." ECF No. 322 at 8. PMI moves for a new trial on four primary bases: the jury verdict (1) was against the great weight of the evidence and resulted from (2) a legally erroneous jury instruction, (3) prejudicial evidentiary rulings, and (4) Mr. Barrick's counsel's prejudicial closing argument. The court considers each basis in turn.

### I.    Jury Verdict Against the Great Weight of the Evidence

PMI argues that it is entitled to a new trial because the jury verdict was against the great weight of the evidence. "Where a new trial motion asserts that the jury verdict is not supported by the evidence, 'the verdict must stand unless it is "clearly, decidedly, or overwhelmingly against the weight of the evidence."'" *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (citation omitted). The court must consider the evidence "in the light most favorable to the prevailing party, bearing in mind that '[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'" *Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003) (alteration in original) (citation omitted).

PMI contends that Mr. Barrick "did not present competent evidence at trial to establish that his protected activity was the 'but for' cause of his termination." ECF No. 322 at 10–11. PMI asserts that "the clear weight of the evidence at trial revealed two things: (i) PMI had no notice or knowledge of [Mr. Barrick's] protected activity and (ii) that PMI made employment decisions based on legitimate, non-discriminatory business needs, not because of [Mr. Barrick's] protected

activity." *Id.* at 11–12.[2] PMI argues that Mr. Barrick "offered no retort to the legitimate business reasons underlying PMI's decision to undertake the [reduction in force ("RIF")]." *Id.* at 12. PMI specifies the following legitimate business reasons to which Mr. Barrick "offered no retort": PMI's largest beef supplier, XL Foods, experiencing an E. coli outbreak and recall; PMI's altered banking relationship with Zions Bank after the Federal Bureau of Investigation ("FBI") raid; PMI's change in corporate structure; that the RIF impacted multiple employees—not just Mr. Barrick—and was a difficult decision for PMI; and that PMI's financial results in the fourth quarter of 2012 and cost savings demonstrated that the RIF was reasonable.  PMI concludes that it is entitled to a new trial because "the evidence established that PMI had a legitimate, non-discriminatory business reason for discharging [Mr. Barrick]." ECF No. 322 at 17.

PMI's argument is unavailing. Construing the evidence in the light most favorable to Mr. Barrick, the court does not find that the verdict is "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme*, 164 F.3d at 1284 (citation omitted). Although PMI presented evidence that its largest beef supplier, XL Foods, experienced an E. coli outbreak that impacted PMI's beef supply and finances, Mr. Barrick presented evidence through his own testimony and that of Mark Flanders that PMI's business and financials were not as severely impacted as PMI

---

[2] Although PMI references notice, PMI does not raise any arguments regarding the evidence presented at trial pertaining to notice and argues only about the evidence pertaining to causation. The court thus limits its analysis to the evidence pertaining to causation.

In its Motion for Judgment as a Matter of Law (ECF No. 320), PMI raised arguments regarding the evidence presented at trial related to notice. PMI states in its Motion for a New Trial that it incorporates its Motion for Judgment as a Matter of Law by reference. ECF No. 322 at 10. The court therefore incorporates by reference its analysis of PMI's notice arguments from its order on PMI's Motion for Judgment as a Matter of Law. Viewing the notice evidence in the light most favorable to Mr. Barrick, the court does not find that the jury verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme*, 164 F.3d at 1284 (citation omitted).

represented. PMI also presented evidence that its financial position and banking relationship with Zions Bank were altered by the FBI raid. PMI presented evidence of the following: the FBI seized approximately $6.5 million from PMI's bank accounts, and it was unclear when it would be returned; Zions Bank declared PMI in default on its $26 million line of credit, Zions Bank imposed several requirements upon PMI to continue their business relationship (e.g., reducing the line of credit), and PMI was unable to access bank accounts in other countries to pay payroll expenses in the United States. But Mr. Barrick presented evidence that PMI never lost its line of credit, even though it was reduced, and that PMI had an agreement in place with the Department of Justice before the RIF to return the seized funds. And though PMI presented evidence that its corporate structure changed, which resulted in the phasing out of Mr. Barrick's job responsibilities, Mr. Barrick presented evidence that this corporate shift occurred almost a year before the RIF and that Mr. Barrick had been assigned new job duties. Thus, PMI's assertion that Mr. Barrick "offered no retort to the legitimate business reasons underlying PMI's decision to undertake the RIF" (ECF No. 322 at 12) falls flat. That PMI finds its evidence more compelling and credible does not compel this court to grant a new trial, as it is exclusively within the province of the jury to "apprais[e] credibility, determine[e] the weight to be given to the testimony, draw[] inferences from the facts established, resolv[e] conflicts in the evidence, and reach[] ultimate conclusions of fact." *Snyder*, 354 F.3d at 1188. Finally, PMI's arguments that the RIF was legitimate and non-discriminatory because it impacted multiple employees, was difficult for PMI, and resulted in financial savings for PMI do not gain traction. Mr. Barrick did not need to show that the RIF as a whole was pretextual, only that his inclusion in the RIF was pretextual and that he was terminated because of his protected activity.

Viewed in the light most favorable to Mr. Barrick, the foregoing evidence and other evidence presented at trial reveals that the jury verdict was not "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme*, 164 F.3d at 1284 (citation omitted). Thus, "the verdict must stand." *Id.* (citation omitted).

## II.     Jury Instruction

PMI's second argument in favor of a new trial is that the jury verdict was the result of an erroneous jury instruction. "Failure to properly instruct the jury requires a new trial 'if the jury might have based its verdict on the erroneously given instruction.'" *Henning*, 530 F.3d at 1221 (citation omitted). "Faulty jury instructions require reversal when (1) [there is] substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1198 (10th Cir. 2012) (citation omitted). While "[t]he admission or exclusion of a particular jury instruction is within the sound discretion of the trial court," a trial court's "conclusions on legal issues" are reviewed de novo. *City of Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996) (citations omitted). A district court's jury instructions are reviewed de novo to see whether they, "considered as a whole, properly stated the applicable law and directed the jury to consider matters within its province." *Gardetto v. Mason*, 100 F.3d 803, 816 (10th Cir. 1996). In reviewing the instructions, "[the court] consider[s] all the jury heard, and from the standpoint of the jury, decide[s] not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." *Id.* (citation omitted).

Here, PMI argues that the court "included a misleading and prejudicial instruction" in instructing the jury on the causation standard. ECF No. 322 at 17–18. To succeed on his FCA

retaliation claim, Mr. Barrick had to establish that he was terminated "because of" his protected

activity. 31 U.S.C. § 3730(h)(1). At the invitation of PMI, and in line with several other circuits

that drew on the holdings of an Age Discrimination in Employment Act case (*Gross v. FBL Fin.*

*Servs., Inc.*, 557 U.S. 167 (2009)) and a Title VII case (*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570

U.S. 338 (2013)),[3] the court interpreted "because of" to impose a but-for causation standard. The

court instructed the jury as follows:

> ### FINAL INSTRUCTION NO. 27
> **False Claims Act Retaliation Claim – Explanation of Causal Connection**
>> Mr. Barrick must also prove, by a preponderance of the evidence, that PMI retaliated against him "because of" his engagement in protected activity. To establish this element, Mr. Barrick must prove that "but-for" his engagement in protected activity, PMI would not have retaliated against him. In other words, Mr. Barrick must prove, by a preponderance of the evidence, that PMI would not have retaliated against him in the absence of his protected activity.
>> Often, events have multiple "but-for" causes. For example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a "but-for" cause of the collision.

ECF No. 313 at 54. PMI takes issue with the second paragraph in this jury instruction because "[i]t

was improper to suggest that [Mr. Barrick's] termination could occur both because PMI terminated

him as part of a RIF and because of [his] protected activity . . . because it presupposes that PMI

knew [Mr. Barrick] was engaged in protected activity at the time he was discharged." ECF No.

322 at 18. PMI also contends that the court improperly provided the jury with the car accident

---

[3] *See, e.g.*, *Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020); *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76–78 (3d Cir. 2018); *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017); *Nesbitt v. Candler County*, 945 F.3d 1355, 1357–60 (11th Cir. 2020).

example because the source of the example, *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), limited its decision to Title VII cases. The court is not persuaded by PMI's arguments.

The court does not find that the car accident example included in Final Instruction No. 27 improperly implied that PMI had notice. It is not apparent to the court that the plain text of Final Instruction No. 27 supports such an interpretation, and PMI offers no textual analysis of the instruction, making only conclusory statements that it "improperly implied" that PMI had notice. ECF No. 322 at 18. But even if Final Instruction No. 27 could be so interpreted when read in isolation, such an interpretation is untenable when read along with the other instructions given to the jury. Final Instruction No. 23 clearly separates the "because of" causation requirement from the notice requirement, instructs the jurors that Mr. Barrick must prove notice and causation, and advises the jury that subsequent instructions would "instruct [them] on what each of these elements requires." ECF No. 313 at 50. Final Instruction No. 25 expressly instructs the jury that "Mr. Barrick must prove, by a preponderance of the evidence, that PMI was on notice." *Id.* at 52. And Final Instruction No. 27 is expressly limited to the "because of" causation element and is titled "Explanation of Causal Connection." *Id.* at 54. Thus, PMI's argument that the car accident example in Final Instruction No. 27 presupposes notice fails.

The court also disagrees with PMI's contention that its inclusion of the car accident example from *Bostock* in Final Instruction No. 27 was improper. In *Bostock*, the Supreme Court noted that Title VII "prohibits employers from taking certain actions 'because of' sex." 140 S. Ct. at 1739. Citing *Gross* and *Nassar*, the Supreme Court discussed that the phrase "because of" imposed a but-for causation standard and further stated, "[o]ften, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause

8

of the collision." *Id.* (emphasis in original). PMI asserts that the Supreme Court in *Bostock* "made clear the narrow reach of its decision to Title VII cases" and stated that "'none of' the many laws that might be touched by their decision were before them and that they 'd[id] not prejudge any such question today.'" ECF No. 322 at 18–19 (quoting *Bostock*, 140 S. Ct. at 1753). But PMI has pulled that language from the *Bostock* Court's discussion of "other federal or state laws that prohibit sex discrimination" and the issues presented under Title VII by "sex-segregated bathrooms, locker rooms, and dress codes." *Bostock*, 140 S. Ct. at 1753. Notably, the Supreme Court was not discussing the applicability or definition of but-for causation in making those statements. Indeed, the *Bostock* Court's statement about events having multiple but-for causes and the car accident example are not themselves cabined by language limiting their applicability to Title VII cases; they are general statements about but-for causation. Also, in defining "because of" under Title VII retaliation claims, the *Nassar* Court drew upon the *Gross* Court's definition of "because of" in the ADEA context. *Nassar*, 570 U.S. at 352. In so doing, the *Nassar* Court noted that the *Gross* decision "was careful to restrict its analysis to the statute before it," but stated that "the particular confines of *Gross* d[id] not deprive it of all persuasive force." *Id.* at 351. Similarly here, the court does not find that the limiting language in *Bostock* "deprive[s] it of all persuasive force" as it relates to "but-for" causation in the FCA retaliation context.

PMI's final statement on this issue is that "it is hard to fathom that any reasonable juror would so greatly discount the significance of the economic and business factors to conclude that retaliation was the 'but for' reason for discharging [Mr. Barrick]," and that the "jury verdict demonstrates that they based their verdict on the erroneous jury instruction explaining causal connection." ECF No. 322 at 20. Based on the evidence presented at trial and as stated in the previous section, *see supra* Section I, the court finds that a reasonable jury could easily conclude

that Mr. Barrick was terminated because of his protected activity, rather than because of PMI's proffered legitimate, non-discriminatory business reasons. And, for the reasons set forth in this Section, the court does not find that its jury instruction was erroneous.

In short, the court finds that Final Instruction No. 27 was neither misleading nor prejudicial. The court's instructions—including Final Instruction No. 27—properly guided the jury in its deliberations and were not prejudicial. The jury verdict was not the product of a legally erroneous jury instruction. Accordingly, the court denies PMI's motion for a new trial on this basis.[4]

### III.    Evidentiary Rulings

PMI also moves for a new trial based on prejudicial evidentiary rulings regarding the dismissal of Mr. Barrick's FCA claims, Special Agent Crystal Bowen's FBI 302 Report (the "302 Report"), and future evidence of disability. A motion for a new trial based on erroneous evidentiary rulings will be granted "only if the error prejudicially affects a substantial right of a party." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993); *see also Henning*, 530 F.3d at 1217. Erroneous evidentiary rulings "can only be prejudicial 'if it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'" *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998) (citation omitted). "Evidentiary rulings are reviewed under an abuse

---

[4] In a footnote, PMI alternatively requests that the court "alter the verdict in PMI's favor" pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 322 at 20 n.4. PMI also cites *Rural Water District No. 4 v. City of Eudora*, 659 F.3d 969, 974–75 (10th Cir. 2011) (citation omitted), for the proposition that "[w]here a jury instruction is legally erroneous," the court will reverse the resulting verdict "if the jury might have based its verdict on the erroneously given instruction."

Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The court has not yet entered judgment, rendering PMI's request pursuant to Rule 59(e) premature. But even if the request were timely, for the reasons set forth in Section II, the court will not "alter the verdict in PMI's favor" based on the jury instructions given.

of discretion standard." *United States v. Quintana*, 70 F.3d 1167, 1170 (10th Cir. 1995). A trial judge is given "wide latitude with respect to [a] motion for a new trial because he [is] uniquely able to assess the likelihood that the [evidence] was prejudicial." *Henning*, 530 F.3d at 1217 (alteration in original) (citation omitted). The court considers in turn each of the evidentiary rulings that PMI asserts were in error and concludes that they were neither erroneous nor prejudicial.

A.    Evidence Regarding the Dismissal of Mr. Barrick's FCA Claims

Prior to trial, the court granted PMI's motion *in limine* to preclude testimony or evidence regarding PMI's guilty plea and judgment in a criminal case, finding such evidence irrelevant and therefore inadmissible under Federal Rules of Evidence 401 and 402. ECF No. 270. However, in recognition of how factually intertwined PMI's alleged activities giving rise to its guilty plea were with actions Mr. Barrick believed constituted an FCA violation, the court included a clear caveat and warning in its order: "If PMI represents at trial that there was no fraudulent activity afoot in its offices, PMI has then opened the door on this issue, and the court will reconsider this ruling." *Id.* at 3. And PMI did just that at trial when its executives Darin Parker ("Mr. Parker") and Steve Johnson ("Mr. Johnson") testified that no fraudulent meat exporting activity was afoot in PMI's offices. *See, e.g.*, ECF No. 323-5 at 9–11, 14–17; ECF No. 323-4 at 35–36. Accordingly, the court permitted Mr. Barrick's counsel to ask a single question of Mr. Parker related to PMI's guilty plea—whether PMI admitted in court proceedings that on or about March 17, 2011, PMI knowingly made a false statement in a shipper's certificate or other nonofficial or official certificate provided for in the regulations prescribed by the Secretary of the USDA. The court did not permit PMI to offer evidence that Mr. Barrick's underlying FCA claim was dismissed on the merits or to introduce a prior Memorandum Decision of the court on this issue.

PMI now argues that it is entitled to a new trial because "[b]y allowing [Mr. Barrick] to elicit testimony from PMI as to the outcome of an unrelated criminal case, but denying PMI the opportunity to respond in kind regarding the dismissal of the underlying FCA case, PMI was substantially prejudiced in the eyes of the jury." ECF No. 322 at 22. PMI argues that such evidence was not relevant under Rule 401 and unfairly prejudicial under Rule 403. PMI further argues that the dismissal of Mr. Barrick's FCA claim was relevant to whether PMI's termination of Mr. Barrick was pretextual and to Mr. Barrick's damages and mitigation efforts. With respect to Mr. Barrick's damages and mitigation efforts, PMI argues that "[t]he procedural history of the underlying *qui tam* action reveals that [Mr. Barrick] appears to have spent the majority of his time pursuing a meritless *qui tam* lawsuit in the hopes of a significant pay day." ECF No. 322 at 26. Finally, PMI argues that excluding evidence of the dismissal was unfairly prejudicial to PMI.[5]

The court is not persuaded by PMI's arguments. In light of PMI's representations at trial that it was not engaged in fraudulent activity in its offices, the court, as provided in its prior ruling on PMI's motion *in limine*, found that PMI had opened the door on this issue and reconsidered its

---

[5] PMI also argues that the court should have permitted PMI to introduce the Memorandum Decision dismissing Mr. Barrick's FCA claim on the merits because the dismissal was "probative of whether [Mr. Barrick] was engaged in protected activity." ECF No. 322 at 24. Specifically, PMI argues that the Memorandum Decision was relevant to whether Mr. Barrick's "subjective belief that he was undertaking lawful acts in furtherance of a claim under the FCA, or pursuing efforts to stop one or more violations of the FCA, was objective [sic] reasonable." *Id.* According to PMI, "[w]ithout evidence of dismissal of the underlying *qui tam* claims, the jury was not able to apply the 'objectively reasonable' test, as the jury did not have all the underlying facts." *Id.* This argument fails. The jury was never instructed on the "subjective belief" and "objectively reasonable" standards, and PMI has failed to provide binding authority that the jury should have been instructed on these standards. PMI's argument that the jury was unable to apply these standards is therefore unavailing. Moreover, as PMI acknowledges, the parties eventually stipulated that Mr. Barrick was engaged in protected activity. ECF No. 322 at 24 n.6. This point is therefore moot.

ruling excluding such evidence. Accordingly, the court permitted Mr. Barrick's counsel to ask a single question of Mr. Parker regarding PMI's admission in court proceedings that it had knowingly made a false statement. This was proper for impeachment purposes, given Mr. Parker's representations that there was no fraudulent activity afoot in PMI's offices. Additionally, whether PMI was engaged in fraudulent conduct was relevant to whether Mr. Barrick was engaged in protected activity and whether PMI had notice of that protected activity and terminated him because of it, which are elements of consequence to the determination of Mr. Barrick's retaliation claim. If PMI was engaged in fraudulent conduct, then it was more likely that Mr. Barrick was engaged in protected activity, that PMI had notice of this protected activity, and that PMI terminated Mr. Barrick in retaliation for his protected activity.  The court is not persuaded by PMI's argument that because it admitted to making a false statement to the USDA "almost eighteen months **after** terminating [Mr. Barrick]" (ECF No. 322 at 22 (emphasis in original)), the admission is irrelevant. What is relevant is not when the admission was made, but the content of the admission—that the false statement was made in March of 2011, while Mr. Barrick was still employed by PMI. That a false statement was made in March of 2011 is relevant to the issues of protected activity, notice, and causation, and it flatly contradicts PMI's representations at trial that there was no fraudulent activity afoot in PMI's offices.

Permitting Mr. Barrick's counsel to ask this single question was not unfairly prejudicial to PMI. Mr. Barrick's counsel was not permitted to, and indeed did not, state that the court proceedings in which PMI made this admission were criminal in nature, nor that PMI was criminally charged or pleaded guilty to a criminal offense. The court also explicitly instructed the jury in Final Instruction No. 14 that "[n]either the outcome of the FCA claims nor the outcome of the criminal investigation are relevant to any issues that you are being asked to decide, and you

should not consider the outcomes for any purpose." ECF No. 313 at 40. These limitations and instructions provided sufficient safeguards against any unfair prejudice.

Additionally, the fact that the court permitted Mr. Barrick's counsel to ask this question did not compel the court to permit PMI to introduce evidence that Mr. Barrick's underlying FCA claim was dismissed on the merits. This dismissal bears only the most tenuous and speculative connection to Mr. Barrick's damages and mitigation efforts. And to the extent that the dismissal is relevant to whether PMI's decision to dismiss Mr. Barrick was pretextual, the relevance was substantially outweighed by the dangers of unfair prejudice and misleading the jury. Mr. Barrick need not have prevailed on his *qui tam* claims to succeed on his retaliation claim. *See United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201–02 (4th Cir. 2018) ("[T]he plaintiff's actions need not 'lead to a viable FCA action' . . . ." (citation omitted)); *Miller v. Abbott Lab'ys*, 648 F. App'x 555, 560 (6th Cir. 2016) (unpublished) ("Accordingly, consistent with other circuits, this court has explained that 'although [the plaintiff] need not establish that [the employer] actually violated the FCA, she must show that her allegations of fraud grew out of a reasonable belief in such fraud.'" (alteration in original) (citations omitted)). Indeed, a successful *qui tam* suit is not an element of an FCA retaliation claim. *See* 31 U.S.C. § 3730(h). Presenting evidence—including documentary evidence—of the dismissal on the merits would have been prejudicial and may have misled the jury to conclude that Mr. Barrick must succeed on his underlying *qui tam* claims to succeed on his retaliation claim. Moreover, evidence that Mr. Barrick's *qui tam* claims were dismissed did come in at trial through Mr. Barrick's own testimony (ECF No. 323-3 at 121) and Mark Moffat's testimony (ECF No. 323-10 at 21). PMI has failed to establish that additional evidence regarding the dismissal of Mr. Barrick's FCA claims would have led to a contrary result.

Neither is the court persuaded by PMI's inverse-Rule 403 argument that "excluding evidence of the dismissal on the merits of [Mr. Barrick's] underlying *qui tam* case unfairly prejudiced PMI in the eyes of the jurors." ECF No. 322 at 27. As the court has already ruled, this argument "manipulates Rule 403 by turning the rule on its head. Rule 403 addresses whether the *admission* of relevant evidence would be unfairly prejudicial or mislead the jury (among other dangers), not whether the *exclusion* of relevant evidence would bring about such dangers." ECF No. 272 at 3 (emphasis in original). The court did not embrace PMI's manipulation of Rule 403 before trial, and the court declines to do so now.

In sum, the court does not find that its evidentiary rulings regarding evidence of the dismissal of Mr. Barrick's FCA claims were erroneous. The court also finds that PMI has failed to present sufficient evidence to establish that the outcome would have been different had the jury been given additional evidence. Accordingly, PMI's motion for a new trial on this basis is denied.

B.     Admission of the 302 Report

PMI argues that the court erred in admitting the 302 Report. PMI first argues that the 302 Report of Special Agent Bowen's interview of Mr. Johnson was not a statement of a party-opponent because "a statement of a party-opponent is only an admission if the party actually made the statement or adopted it as true." ECF No. 322 at 27. PMI asserts that the 302 Report is Agent Bowen's statement and not Mr. Johnson's statement, the 302 Report is not a transcript of what either individual said, and Mr. Johnson did not sign or otherwise adopt the 302 Report. In support of its argument, PMI cites *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975), in which the Tenth Circuit found no error in the trial court's refusal to "allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it." The court addressed PMI's opposing party statement argument in its

15

Order Denying Motion *in Limine* to Exclude Evidence of or Reference to FBI 302 Reports and Supporting Memorandum ("Order") and hereby incorporates its analysis and conclusion that Johnson's statements were not hearsay—either because they were not offered for the truth of the matter asserted or were opposing party statements. ECF No. 288 at 5–6. Additionally, the court notes that PMI's citation to *Hill* is inapposite because *Hill* addresses the use of a 302 Report for impeachment purposes, not its admissibility as an opposing party statement, and the court did not allow the 302 Report to be used to impeach Mr. Johnson at trial.

PMI next argues that Mr. Barrick "did not prove a hearsay exception for every link in the hearsay chain." ECF No. 322 at 29. PMI specifically argues that the 302 Report was not admissible as a public record under Federal Rule of Evidence 803(8) because it does not contain factual findings, which is the only permissible means through which public records can be admitted under a hearsay exception in a civil case. PMI also argues that Rule 803(8) does not apply because the 302 Report "lacked the necessary indicia of trustworthiness" since it was "prepared on a five-day delay, . . . it was not prepared in connection with an official, formal hearing, and it was not the FBI's final report on this matter." ECF No. 322 at 30. As the court noted in its Order, the 302 Report "presents two levels of potential hearsay: 1) Johnson's statements to [Special Agent] Bowen, which are reflected in the 302 Report; and 2) the 302 Report itself." ECF No. 288 at 3–4. The court addressed each of the two hearsay layers in its Order. The court found that, whether the 302 Report was offered for the truth of the matter or not for the truth of the matter, multiple exemptions and exceptions—including Rule 803(8)—applied and satisfied each of the hearsay layers, providing for the admissibility of the 302 Report. The court incorporates its analysis and conclusions here. ECF No. 288. And even if the 302 Report were not admissible as a public record under Rule 803(8), the court found that it was also admissible as "a writing used to refresh a

16

witness's testimony under Federal Rule of Evidence 612 or a recorded recollection under Rule 803(5)." *Id.* at 7. PMI does not argue that these exceptions are inapplicable. The court also noted in its Order that the 302 Report could be admissible as a business record under Rule 803(6). *Id.* at 9 n.3. PMI's only argument against the applicability of this exception is that the 302 Report "lacked trustworthiness." ECF No. 322 at 30. However, the court expressly found in its Order that PMI's arguments regarding the lack of trustworthiness of the 302 Report were unavailing under the public record exception and under the residual exception, and the court incorporates that analysis and conclusion here. *Id.* at 8–10.

PMI also argues that the residual hearsay exception under Rule 807 did not apply because there were not sufficient guarantees of its trustworthiness and Special Agent Bowen testified at trial. In its Order, the court addressed the residual hearsay exception and found that it did apply. The court incorporates its analysis and conclusion here. ECF No. 288 at 9–11. And even if the residual hearsay exception did not apply, the court found multiple alternative hearsay exceptions in its Order that would permit the 302 Report to be admitted for the truth of the matter asserted. ECF No. 288.

Finally, PMI raises arguments regarding relevance and prejudice. PMI argues that the 302 Report was "irrelevant to [Mr. Barrick's] protected activities because it did not convey a connection to the FCA," and the 302 Report "did not demonstrate the necessary causation, because the interview clearly related to potential criminal conduct and provided no suggestion of a nexus to an FCA violation." ECF No. 322 at 29. The court disagrees. As the court stated in its Order, "the 302 Report is relevant to whether PMI had notice of [Mr. Barrick's] engagement in a protected activity and whether PMI terminated [Mr. Barrick's] employment because of his engagement in protected activity or for a legitimate, non-discriminatory business reason. Both issues are central

elements of [Mr. Barrick's] retaliation claim under the False Claims Act." ECF No. 288 at 11. PMI also argues that the 302 Report was inadmissible under Rule 403 because it "was certainly unfairly prejudicial because it was so inflammatory that it left the jury to make a decision on an improper, emotional, basis" and "was merely offered to make PMI appear to be a criminal." ECF No. 322 at 32. The court addressed and rejected this very argument in its Order and accordingly incorporates its analysis and conclusion here. ECF No. 288 at 11–12.

In short, the court finds that its admission of the 302 Report was neither erroneous nor prejudicial. The court therefore denies PMI's motion for a new trial on that basis.

### C.    Ruling on Future Evidence of Disability

PMI's final argument regarding evidentiary rulings is that the court "improperly denied the admission" of an Order of Modified Child Support from 2018 (the "Child Support Order"). ECF No. 322 at 26. PMI argues that it "was not seeking to introduce the [Child Support Order] for the truth of its contents, but [rather] to undermine [Mr. Barrick's] credibility and demonstrate [that] his damages allegations were untrustworthy and unsupported." *Id.* PMI contends that "[t]he import of this evidence was to impeach [Mr. Barrick], because he was representing to the jury, through his 2017 tax return . . . that he had income." *Id.*

Under Federal Rule of Evidence 608, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b). However, the "the court *may*, on cross-examination, allow [such instances] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness" *Id.* 608(b)(1) (emphasis added). Still, "[t]he probative value of the proffered evidence is judged by its relevancy to the issues of the case." *Bennett v. Longacre*, 774 F.2d 1024, 1027 (10th Cir. 1985) (citing FED. R. EVID. 401). "The determination of whether

the evidence is relevant is within the sound discretion of the trial court." *Id.* "Even if it is determined to be relevant, the trial court must balance the probative value of the evidence against its potential prejudicial effect, and may exclude otherwise admissible evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citing FED. R. EVID. 403); *see also United States v. Beltran-Garcia*, 338 F. App'x 765, 770 (10th Cir. 2009) (unpublished) ("[T]he [trial court's] discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence.").

Here, the court's decision to deny the admission of the Child Support Order was not erroneous. Under Rule 608(b), PMI could not have admitted the Child Support Order—which is extrinsic evidence—to prove specific instances of Mr. Barrick's conduct to attack his character for truthfulness. And if PMI sought to inquire into Mr. Barrick's specific instances of conduct related to the Child Support Order on cross-examination or impeach him, the Child Support Order still would not have been admissible for those purposes. *See* FED. R. EVID. 608(b); *Beltran-Garcia*, 338 F. App'x at 770 ("[P]arties may only introduce specific instances by asking the witness on cross-examination about the incident, not by introducing documents or calling other witnesses."). Moreover, such an inquiry would need to pass muster under Rules 401 and 403. The inquiry failed to do so. Mr. Barrick's representation of his income to the Utah Office of Recovery Services in relation to his child support obligations is only tangentially relevant to the issue of damages. Moreover, even if such evidence were relevant under Rule 401, its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403. During this jury trial, PMI was on trial for allegedly terminating Mr. Barrick because of his protected activity, in violation of the FCA's anti-retaliation provision. Mr. Barrick was not on trial for his conduct related to his child

support obligations. The Child Support Order itself and any inquiry into Mr. Barrick's specific instances of conduct in relation to the Child Support Order would have been highly prejudicial, and any probative value of this evidence would have been substantially outweighed by the danger of unfair prejudice. The court therefore reaffirms its denial of the admission of the Child Support Order under Rules 608(b), 401, and 403, does not find that its evidentiary ruling was erroneous, and denies PMI's motion for a new trial on this basis.

## IV.   Plaintiff's Counsel's Closing Argument

The final basis upon which PMI moves for a new trial is Mr. Barrick's counsel's "highly prejudicial" closing argument, which PMI asserts "likely influenced the jury." ECF No. 322 at 34. PMI also asserts that Mr. Barrick's counsel's conduct during trial was improper. PMI specifies the following conduct on the part of Mr. Barrick's counsel: during trial, Mr. Barrick's counsel "elicited testimony regarding PMI's alleged criminal conduct" (ECF No. 322 at 34); during opening statement and closing argument, Mr. Barrick's counsel incorrectly "stated that employers cannot fire whistleblowers" (*id.* at 36); Mr. Barrick's counsel "misstated the impact of PMI's false statement and the FCA" (*id.* at 37); and Mr. Barrick's counsel referenced during closing argument "a 'ghost' email between [Mr. Barrick] and Agent Bowen that was not in the record" (*id.* at 39).

As an initial matter, PMI acknowledges that it did not raise an objection at trial based on attorney misconduct. ECF No. 322 at 34 n.9. PMI's failure to object prevented the court from considering providing the jury with curative instructions and waived any objections based on such conduct. *See Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962 (10th Cir. 1993) ("There are 'strong policy reasons for the basic rule that timely objection is a condition precedent to review on appeal.' '[A] party may not wait and see whether the verdict is favorable before deciding to object.' . . . Unless the fairness of the trial is threatened, [the court] will not exercise [its] discretion

to review a challenge not raised by a timely objection." (internal citations omitted)). That said, even if the court were to consider PMI's objections based on attorney misconduct, the court still would deny PMI's motion for a new trial based on such objections.

"The decision whether misconduct in a trial has been so egregious as to require retrial is largely left to the discretion of the trial court." *Id.* at 962 (citation omitted). The trial court will be reversed only for abuse of discretion. *Id.* "A new trial may be required only if the moving party shows that it was prejudiced by the attorney misconduct." *Id.* "'[T]he trial judge is in the best position to determine' the prejudicial effect of improper arguments, and thus whether a new trial is warranted." *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1127 (10th Cir. 2009) (citation omitted). The Tenth Circuit has held that "curative instructions—issued promptly after the improper argument and specifically addressing the precise impropriety complained of—can go far in erasing prejudice occasioned by an improper remark" *Id.* at 1131. The Tenth Circuit has also "sometimes suggested that a general instruction at close of trial, reminding the jury that counsels' arguments are not evidence, can help mitigate an improper closing argument." *Id.* A sliding scale approach has been adopted: "the more improper the argument and the more prejudicial the circumstances, the more specific and timely must be the curative instruction." *Id.* at 1132.

The court does not find that Mr. Barrick's counsel's conduct during trial and closing argument warrants a new trial. With respect to testimony regarding PMI's alleged criminal conduct, such evidence was relevant to the issues of engagement in protected activity, notice, and causation and to refute PMI's representation at trial that there was no fraudulent activity afoot in its offices. Moreover, the court issued an explicit limiting instruction regarding the outcome of the criminal investigation of PMI:

**FINAL INSTRUCTION NO. 14**

**False Claims Act Claims and Criminal Investigation**

Some evidence has been presented with respect to the dismissal of Mr. Barrick's False Claims Act ("FCA") claims. Some evidence has also been presented with respect to a criminal investigation of PMI by the FBI. Neither the outcome of the FCA claims nor the outcome of the criminal investigation are relevant to any issues that you are being asked to decide, and you should not consider the outcomes for any purpose.

ECF No. 313 at 40. This instruction mitigated any improper use of, or weight given to, evidence regarding the outcome of the criminal investigation.

Mr. Barrick's counsel's statements during opening statement and closing argument regarding an employer's ability to fire employees for being whistleblowers also do not warrant a new trial. First, 31 U.S.C. § 3730(h)(1) does in fact prohibit the termination of an employee "because of" his protected activity, or whistleblowing conduct. Second, the jury was expressly instructed, at PMI's request, in Final Instruction No. 26, as follows:

PMI can assert that it had a legitimate, non-discriminatory reason for taking adverse employment action against Mr. Barrick. An employer engages in legitimate, non-discriminatory conduct when it takes action that is premised upon legitimate business reasons that have nothing to do with its knowledge or lack of knowledge of the protected activities of the employee.

ECF No. 313 at 53. Finally, the jury was repeatedly instructed, in preliminary and final instructions, that the arguments of counsel are not evidence. *Id.* at 10, 11, 31, 36, 37, 61. Thus, the law was correctly presented to the jury and they were instructed to disregard counsel's statements that were contrary to the evidence and/or jury instructions.

PMI's argument that Mr. Barrick's counsel "misstated the impact of PMI's false statement and the FCA" (ECF No. 322 at 37) also does not warrant a new trial. PMI first takes issue with Mr. Barrick's counsel's statement in closing argument that "[PMI] knew they were lying to the government, avoiding inspection fees by telling the government that meat was going to Moldova

22

when it was actually going to Hong Kong to be smuggled into China." ECF No. 323-1 at 28. Quoting the closing argument, PMI contends that "there was no evidence in the record that PMI 'knew they were lying to the government, [to] avoid inspection fees by telling the government that meat was going to Moldova when it was actually going to Hong Kong to be smuggled into China.'" ECF No. 322 at 37. Not only does PMI misstate Mr. Barrick's counsel's closing argument, but PMI's position is also directly contradicted by the record. There was evidence in the record that PMI admitted in court proceedings that it had knowingly made a false statement on or about March 17, 2011 in a shipper's certificate or other nonofficial or official certificate provided for in the regulations prescribed by the Secretary of the USDA. PMI underscores that this statement was part of a guilty plea in 2014, but the statement pertained to PMI's conduct in 2011, which is a relevant time for purposes of Mr. Barrick's retaliation claim. PMI notes that Mr. Barrick's counsel incorrectly stated that PMI admitted to knowingly "falsifying USDA certificates" and making "false statements on a shipper certificate" (ECF No. 323-1 at 15, 9) when its admission only pertained to a single false statement and a single certificate. But evidence was admitted through the 302 Report that Mr. Johnson told Special Agent Bowen that it was "a standard business practice at [PMI]" to send meat product or loads to Hong Kong and Costa Rica or Honduras that would end up in China and Japan, respectively, and that when loads reach Costa Rica or Honduras, documentation or packaging was "changed from their original state into something else." ECF No. 344-3 at 3. Thus, there was ample evidence in the record to support Mr. Barrick's counsel's argument that PMI falsified USDA certificates and made false statements on a shipper certificate.[6]

---

[6] The court also notes that Mr. Barrick's counsel stated elsewhere in closing argument that there was "a shipper certificate" as opposed to multiple shipper certificates (*id.* at 323-1 at 9) and had

PMI next objects to Mr. Barrick's counsel's closing argument on the grounds that PMI's alleged lying to the government about where its product was going does not violate the FCA, Mr. Barrick did not establish during trial that PMI avoided inspection fees through its conduct, and the closing argument "created the false inference that [Mr. Barrick] successfully stopped an FCA violation when an FCA violation never occurred" (ECF No. 322 at 39). But Mr. Barrick testified that countries that were more regulated had higher inspection fees than countries that were less regulated. ECF No. 323-3 at 30. He also testified that because United States beef could not be shipped to China, there would have been no inspection and therefore no inspection fee. *Id.* at 128–29. It is the province of the jury to weigh this evidence. Moreover, these issues appear to pertain to whether Mr. Barrick was engaged in protected activity. The court queries the relevance of PMI's argument on this point when Mr. Barrick and PMI stipulated in Final Instruction No. 24 that Mr. Barrick was engaged in protected activity. ECF No. 313 at 51 ("The parties have stipulated that Mr. Barrick engaged in protected activity. 'Protected activity' includes a lawful act done in furtherance of a private or government lawsuit under the False Claims Act ('FCA'), and other efforts to stop one or more violations of the FCA. For an employee's 'other efforts' to be protected, the employee's efforts must convey a connection to the FCA."). Regardless, the jury was repeatedly instructed, in preliminary and final instructions, that arguments of counsel are not evidence. ECF No. 313 at 10, 11, 31, 36, 37, 61. The court thus does not find that this provides a basis for a new trial.

---

the text of PMI's admission displayed on a slideshow screen, which correctly reflected that there was "a false statement" and "a certificate" rather than multiple of each (ECF No. 344 at 16).

24

Finally, PMI argues that counsel for Mr. Barrick improperly referred to a "ghost" email between Mr. Barrick and Special Agent Bowen that was discovered through imaging Mr. Barrick's computer the day after the FBI raid as supporting evidence that PMI had notice of Mr. Barrick's protected activity. PMI contends that there was no record evidence to support Mr. Barrick's counsel's argument. The court disagrees. Mr. Parker testified at trial that Mr. Barrick's computer had been imaged as of October 11, 2012. ECF No. 323-5 at 35. Mr. Parker also verified that he had signed a discovery document stating that "defendant discovered, while doing a search of the computer used by Barrick during his employment, that he had e-mail communications with Crystal Bowen that predated the FBI raid," and that he was "sure what [he] said was true, accurate, and correct." *Id.* at 34–35. Mr. Parker also testified that he did not recall signing the document and that he did not know if Mr. Barrick's computer had been imaged. *Id.* It was for the jury to weigh this dispute of fact. Further, upon objection by PMI on this issue during closing argument, the court noted in front of the jury that "the jury needs to consult its own recollection as to what the evidence showed," and that it had "repeatedly instructed this jury that statements of counsel are not evidence and that they need to rely on their own recollections, and I'm asking them to do that here." ECF No. 323-1 at 29; *see also* ECF No. 313 at 10, 11, 31, 36, 37, 61. Thus, the court does not find that this is a sufficient basis upon which to grant a new trial.

In short, the court does not find any misconduct on the part of Mr. Barrick's counsel during trial or during closing argument that was "so egregious as to require retrial." *Angelo*, 11 F.3d at 962. The court also does not find that PMI was prejudiced by any misconduct on the part of Mr. Barrick's counsel. Accordingly, the court denies PMI's motion for a new trial on this basis.

## CONCLUSION AND ORDER

For the foregoing reasons, PMI's Rule 59 Motion for a New Trial (ECF No. 322) is DENIED.

DATED March 25, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge