FILED
2022 MAR 25
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRANDON BARRICK, <br><br> Plaintiff/Relator, <br><br> v. <br><br> PARKER-MIGLIORINI INTERNATIONAL, LLC and JOHN AND JANE DOES 1–10, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Case No. 2:12-cv-00381-JNP-CMR <br><br> District Judge Jill N. Parrish |

Before the court is Defendant Parker-Migliorini International, LLC's ("PMI") Renewed Motion for Judgment as a Matter of Law (the "Motion"). ECF No. 320. The court has concluded that oral argument on the Motion would not be helpful or necessary and will accordingly decide the Motion on the written memoranda of the parties. *See* DUCivR 7-1(f). Having carefully reviewed the parties' written memoranda and the relevant law, the court DENIES the Motion.

## BACKGROUND

On June 30, 2021, at the close of Plaintiff Brandon Barrick's ("Mr. Barrick") case, PMI moved for a directed verdict under Federal Rule of Civil Procedure 50(a). Pursuant to Rule 50(b), the court took PMI's motion for a directed verdict under advisement, thereby "submit[ing] the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). Following the five-day jury trial of Mr. Barrick's retaliation claim under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), the jury returned a verdict in favor of Mr. Barrick. The jury found that Mr. Barrick had proven by a preponderance of the evidence that PMI

terminated his employment because of his protected activity in violation of the FCA's anti-retaliation provision and that Mr. Barrick had suffered damages as a result of his termination from PMI. The jury awarded Mr. Barrick $125,000.00 in economic damages but did not award him any non-economic damages. On July 8, 2021, the court ordered briefing regarding PMI's motion for a directed verdict. ECF No. 314. On July 22, 2021, in response to the court's order, PMI filed the instant Motion under Rule 50(a) and (b), arguing that Mr. Barrick presented evidence during his case-in-chief that was "insufficient as a matter of law" to support his retaliation claim under the FCA. ECF No. 320 at 6.

## LEGAL STANDARD

"Rule 50 of the Federal Rules of Civil Procedure provides the process for challenging the sufficiency of the evidence in a civil jury trial." *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1128 (10th Cir. 2019). Rule 50 provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1)(A)–(B). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." *Id.* 50(b).

"Judgment as a matter of law is 'cautiously and sparingly granted . . . .'" *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019) (citation omitted). In deciding a motion for judgment as a matter of law, the court must "construe the evidence and inferences in the light most favorable to the nonmoving party without weighing the evidence, passing on the credibility

2

of witnesses, or substituting [its] judgment for that of the jury." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). "Judgment as a matter of law is appropriate 'only where the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion.'" *Id.* (citation omitted). In other words, "[j]udgment as a matter of law under Rule 50 'is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position.'" *Mountain Dudes*, 946 F.3d at 1129 (citation omitted).

## ANALYSIS

PMI moves for judgment as a matter of law on Mr. Barrick's retaliation claim under the FCA on three primary bases: (1) Mr. Barrick failed to present sufficient evidence that PMI had notice of his protected activity before his termination; (2) Mr. Barrick failed to present sufficient evidence to demonstrate "but-for" causation; and (3) Mr. Barrick failed to present sufficient evidence of damages and mitigation. The court considers each argument in turn.

## I.    Notice

PMI argues that Mr. Barrick "did not advance any competent evidence in his case-in-chief to permit the jury to find that [he] put PMI on notice of his protected activity." ECF No. 320 at 11. "Until 2009, protected activity included only 'lawful acts done by the employee . . . in furtherance of an action under this section [i.e., a *qui tam* suit].'" *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019) (quoting 31 U.S.C. § 3730(h) (2008)). In 2009, Congress "expanded 'the universe of protected conduct'" and "amended the [FCA's] whistleblower protections to protect employees who take 'lawful' actions 'in furtherance of *other efforts to stop [one] or more violations*' of the [FCA]." *Id.* at 765 (emphasis in original) (quoting 31 U.S.C. § 3730(h)(1) (2009)). Congress amended the whistleblower protections once more in 2010, and

3

the "now-effective protections," which are applicable to this case, "apply to an employee's 'lawful' acts 'in furtherance of' *either* 'an action' under the [FCA] 'or other efforts to stop [one] or more violations of' the [FCA]." *Id.* (emphasis in original) (quoting 31 U.S.C. § 3730(h)(1)).

To succeed on an FCA retaliation claim, a plaintiff must provide evidence that "the defendant was on notice of [his] protected activity." *Id.* at 766. "Once Congress expanded the scope of protected activity, the universe of conduct that a plaintiff could allege to show notice also necessarily expanded." *Id.* Thus, the proper question to ask to establish notice (i.e., knowledge) in the post-amendment context is not just whether the employer was on notice that the employee was "taking action in furtherance of a private *qui tam* action or assisting in an . . . action brought by the government," but also whether the employer was on notice that the employee "had tried to stop its alleged [FCA] violations." *Id.* (citation omitted).

The Tenth Circuit "has yet to begin the work of defining the boundaries of what constitutes protected efforts to stop a violation of the [FCA]." *Id.* at 766–67. The Tenth Circuit began that endeavor in *Reed*, noting that "we cannot narrow our consideration to our pre-2009 view that an employee must prove in every instance that the employer knew that []he was acting 'in furtherance of' a *qui tam* action." *Id.* at 767 (citation omitted). The *Reed* court held, though, that "a relator's actions still must convey a connection to the [False Claims Act]." *Id.* (alteration in original) (citing *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 202 (4th Cir. 2018) (noting that "plaintiff's actions need not lead to a viable" *qui tam* action, but "they must still have a nexus to an FCA violation")).

PMI cites *McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698 (10th Cir. 2012) as Tenth Circuit authority on the notice requirement in an FCA retaliation claim. *McBride* held that the notice "may be provided in a number of ways," including: "by informing the employer of 'illegal

4

activities' that would constitute fraud on the United States, by warning the employer of regulatory noncompliance and false reporting of information to a government agency, or by explicitly informing the employer of an FCA violation." *Id.* at 704 (citations omitted). The *McBride* court further stated that "merely informing the employer of regulatory violations, without more, does not provide sufficient notice, because doing so gives the employer 'no suggestion that [the plaintiff is] going to report such noncompliance to government officials' or bring 'her own qui tam action'" and that "[w]histleblowers 'must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations.'" *Id.* (quoting *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 & n.7 (10th Cir. 1996)).

The Tenth Circuit noted in *Reed* that although *McBride* was decided in 2012, "the conduct at issue there occurred in January 2009—before the 2009 amendment took effect in May of that year." *Reed*, 923 F.3d at 765 n.19. *McBride* therefore "had no reason to consider or apply the amended whistleblower provision," rendering its analysis "inapposite to post-2009 protected conduct." *Id.*[1] In other words, *McBride*'s analysis is limited to pre-2009 protected conduct. *McBride* did not consider the notice requirement in light of the 2009 amendment to the FCA's anti-retaliation provision, which "expanded 'the universe of protected conduct'" to include both "an

---

[1] The *Reed* court noted that in *Cash v. Lockheed Martin Corp.*, 684 F. App'x 755, 764 (10th Cir. 2017) (unpublished), the Tenth Circuit "quoted *McBride* for the proposition that 'without evidence that [plaintiff] was planning to report [defendant] to the government or file a *qui tam* suit, [plaintiff's] retaliation claim cannot survive summary judgment." *Reed*, 923 F.3d at 765 n.19. However, the *Reed* court declined to follow *Cash*, noting that it is neither binding nor precedential and that *Cash* "is contrary to the plain text of the current (i.e., post-amendment) whistleblower provisions," "contains no analysis of the change in statutory language," and "conflicts with the decisions of our sister circuits that have construed the current provisions." *Id.*

employee's 'lawful' acts 'in furtherance of'" "an action" under the FCA and "'other efforts to stop [one] or more violations of' the [FCA]." *Reed*, 923 F.3d at 765 (quoting 31 U.S.C. § 3730(h)(1)). And "[o]nce Congress expanded the scope of protected activity, the universe of conduct that a plaintiff could allege to show notice also necessarily expanded." *Id.* at 766. Thus, the examples of protected activity and sufficient notice provided in *McBride* do not account for the full scope of the expanded universes of protected conduct and notice afforded by Congress's 2009 amendment to the FCA's anti-retaliation provision. It is within these expanded universes that Mr. Barrick's retaliation claim falls, as the conduct giving rise to his retaliation claim occurred after Congress's amendments. Thus, while the *McBride* notice examples may still be sufficient to provide notice for an FCA retaliation claim, they are not the only acceptable means by which notice may be provided, especially under a post-2009 amendment rubric.

Additionally, the notice standard set forth in *Ramseyer* and quoted in *McBride* applies to compliance employees and is thus inapplicable here. In *Ramseyer*, an employee whose job responsibilities included monitoring Medicaid compliance did not "put defendants on notice that she was acting 'in furtherance of' an FCA action"[2] when she merely told "her superiors that defendants were not complying with the minimum program requirements of Medicaid," as her "monitoring and reporting activities . . . were exactly those activities [she] was required to undertake in fulfillment of her job duties." 90 F.3d at 1517, 1523. Thus, the Tenth Circuit expressly stated in *Ramseyer* that "*individual[s] whose job[s] entail[] the investigation of fraud* . . . must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations." *Id.* at

---

[2] *Ramseyer* is a pre-2009 amendment case.

1523 n.7 (emphasis added). This heightened notice requirement placed upon compliance employees was reaffirmed in *Reed*, in which the Tenth Circuit "agree[d] . . . that compliance employees typically must do more than other employees to show that their employer knew of the protected activity." 923 F.3d at 767. Indeed, the *Reed* court cited *Ramseyer* for this heightened notice requirement and expressly stated that the "reasoning [regarding compliance employees] has survived the 2009 amendment." *Id.* But PMI has neither argued in its Motion nor put forth evidence at trial that Mr. Barrick was a compliance employee. Indeed, PMI appears to concede in its reply brief that Mr. Barrick is a "non-compliance officer." ECF No. 340 at 3. Accordingly, the heightened notice requirement for compliance employees set forth in *Ramseyer* does not apply to Mr. Barrick.

Turning to the notice evidence presented at trial and construing the evidence and inferences in the light most favorable to Mr. Barrick, the court disagrees with PMI's contention that the evidence "points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Mountain Dudes*, 946 F.3d at 1129 (citation omitted). Mr. Barrick presented evidence of his conversations with PMI's Chief Financial Officer Steve Johnson ("Mr. Johnson") about PMI's illegal shipping practices to Japan and China (ECF No. 323-3 at 20–46, 51–55); FBI Special Agent Crystal Bowen's conversation with Mr. Johnson about the very same subject matter (ECF Nos. 323-9 at 9–22; 333-1); Mr. Barrick's email correspondence informing PMI after the FBI raid that he had retained an attorney and would not answer any questions without his attorney present (ECF Nos. 323-6, 323-7, 323-8); communications between Mr. Barrick's attorney Mark Moffat and PMI's attorney in which PMI's counsel stated that if Mr. Barrick did not participate in an interview regarding what happened during the FBI raid and what Mr. Barrick may have said to the FBI, he could be fired (ECF Nos. 323-10, 323-11); Mr. Barrick's testimony that he provided the FBI with his badge to access PMI's office, a map that he prepared

7

on his office computer of PMI's office depicting the location of each of the managers' officers, and the access code to PMI's off-site storage facility where files were kept; Mr. Barrick's testimony that PMI imaged his computer after the FBI raid to find out what the FBI had been looking for (ECF No. 323-3 at 58–60, 74); and Mark Flanders's testimony that Mr. Johnson stated that he suspected Mr. Barrick was the whistleblower (ECF No. 323-12 at 18–19). A reasonable jury could find, based on this evidence, that PMI had the requisite notice of Mr. Barrick's protected activity. Further, Mr. Barrick provided evidence at trial that PMI made false representations to the USDA regarding where its products were being shipped, which permitted PMI to avoid paying higher inspection fees (ECF Nos. 323-3 at 30, 37; 333-1; 323-5 at 19); that Mr. Barrick discussed PMI's illegal shipping practices with Mr. Johnson; and that Mr. Johnson was questioned about the same by Special Agent Bowen—all before Mr. Barrick's termination. From this too, a reasonable jury could find that Mr. Barrick's conduct conveyed a connection to the FCA, which, as the court instructed the jury, is "a federal law that imposes liability on persons and companies who defraud the government by submitting fraudulent claims for payment and/or to avoid a payment to the government." ECF No. 313 at 5.

PMI has not presented any binding authority that an alleged retaliator must know what the FCA is, what the elements of proof for an FCA claim are, or that the relator's activities were specifically in furtherance of the FCA. Indeed, PMI's counsel expressly acknowledged in his oral motion for a directed verdict that "an employer[']s complete ignorance as to the existence of the False Claims Act" "does not provide a defense." ECF No. 333-3 at 7. And in its reply brief, PMI concedes that Mr. Barrick "need not say the word FCA," nor must PMI "be aware of the existence of the FCA for [Mr. Barrick] to have a viable FCA retaliation claim." ECF No. 340 at 3. Based upon the foregoing evidence, construed in Mr. Barrick's favor, a reasonable jury could find that

Mr. Barrick's conduct conveyed a connection to the FCA and that PMI was on notice of Mr. Barrick's protected activity before his termination.

Although the foregoing evidence is arguably susceptible to alternative inferences that favor PMI, that is not the standard governing the instant Motion. The court must "construe the evidence and inferences in the light most favorable to" Mr. Barrick. *Greene*, 98 F.3d at 557. Under this standard, the inferences supporting Mr. Barrick's position are reasonable and support a finding of notice. Accordingly, the court denies PMI's motion for judgment as a matter of law as it pertains to notice.

## II.    Causation

PMI also argues that Mr. Barrick failed to prove the requisite causation. First, PMI argues that because Mr. Barrick failed to prove that PMI had notice of his protected activities, he also failed to prove that he was fired "because of" his protected activities under a "but-for" causation standard. And even if PMI had notice of Mr. Barrick's protected activity, PMI argues that "[t]he overwhelming evidence presented by PMI proved that it had legitimate non-discriminatory business reasons for terminating [Mr. Barrick] as part of a company-wide [reduction in force]." ECF No. 320 at 27. The court is not persuaded by either argument.

Because the court finds that a reasonable jury could conclude that PMI had notice of Mr. Barrick's protected activity, the court is not persuaded by PMI's first argument pertaining to causation. As for PMI's second causation argument, although PMI presented evidence that Mr. Barrick was terminated for legitimate, non-discriminatory reasons as part of a company-wide reduction in force, Mr. Barrick presented evidence that he was terminated in retaliation for his protected activity. Mr. Barrick also presented evidence that PMI's financial situation leading up to the reduction in force was not as dire as PMI claimed that it was: Mr. Johnson testified that only

$900,000 of PMI's funds were seized and that although limitations were placed on PMI's line of credit, the company never lost access to the line of credit. ECF No. 323-4 at 119, 169. Mr. Barrick also presented evidence that PMI secured a deal with the government and Zions Bank before the reduction in force to have the funds returned. ECF No. 333-2. Construing the evidence and inferences in favor of Mr. Barrick, a reasonable jury could find that PMI terminated Mr. Barrick because of his protected activities rather than for legitimate, non-discriminatory business reasons and that terminating Mr. Barrick as part of the reduction in force was a pretext. The court therefore denies PMI's motion for judgment as a matter of law as it pertains to causation.

## III.   Damages

Finally, PMI argues that Mr. Barrick failed to present sufficient evidence of his damages and mitigation efforts. The court considers PMI's arguments and again disagrees with PMI.

PMI argues that Mr. Barrick did not present testimonial or documentary evidence to establish his salary at the time of his termination; bonuses were merit-based and not guaranteed, and Mr. Barrick did not establish his receipt of bonuses with any certainty; Mr. Barrick's counsel improperly inflated his earnings in closing argument without support in the record; Mr. Barrick did not establish his regular receipt of raises; and Mr. Barrick improperly informed the jury that Medicare and Social Security taxes should be included in a backpay award. In closing argument, Mr. Barrick presented to the jury that his total lost income due to his termination from PMI was approximately $500,000. The jury awarded him $125,000 in economic damages but did not award him any non-economic damages. As observed by Mr. Barrick's counsel, this damages award amounts to "roughly twice the income [Mr.] Barrick earned in 2012 up to the time of his termination." ECF No. 333 at 10.

In support of his lost income, Mr. Barrick presented evidence during trial that his total income in 2010 was $60,402.00, in 2011 was $65,890.00, and in 2012 through his termination on November 15, 2012 was $62,120.00. ECF No. 323-17. Mr. Barrick also presented evidence that his 2011 bonus, which was paid in March of 2012, was $2,287.50. ECF No. 323-15. Although Mr. Johnson testified that bonuses were based on "profit of the company, achievement of goals and objectives, other factors," he also testified that "for the most part [Mr. Barrick] was a good employee" and that he authorized Mr. Barrick's raise every year based on his performance review, and that he authorized Mr. Barrick's bonus every year. ECF No. 323-4 at 13, 47.

The jury was instructed that, if it found that "PMI's fault caused injury to Mr. Barrick, [it] must decide how much money will fairly and adequately compensate Mr. Barrick for that injury." ECF No. 313 at 55. "The fact finder is 'clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party.'" *Advantor Cap. Corp. v. Yeary*, 136 F.3d 1259, 1266 (10th Cir. 1998) (citation omitted). "Absent an award that shocks the judicial conscience or raises an irresistible inference that passion, prejudice, corruption or other improper cause played a part in the jury's damage award, [the court] will not disturb the jury's damage award." *Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1172 (10th Cir. 2013) (citation omitted). "[T]he amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it." *Advantor Cap.*, 136 F.3d at 1266 (citation omitted).

Based upon the foregoing evidence of Mr. Barrick's damages, the court "cannot conclude the jury's award of damages was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* PMI's argument regarding Social Security and Medicare taxes is speculative. The court cannot conclude from the jury's economic damages award that its backpay award was

"gross[ed]-up" (ECF No. 320 at 32) because of these taxes. *See Ryan Dev.*, 711 F.3d at 1172–72 (noting that a defendant's argument was "necessarily speculative" as to "which bases the jury awarded damages" when the jury "returned a general verdict," and concluding that the court could not say that the jury awarded lost profits for too long of a period or determine that the jury awarded damages based on insufficient evidence). Accordingly, the court will neither set the judgment against PMI aside nor reduce the damages award on this basis.[3]

With respect to Mr. Barrick's mitigation efforts, the court notes that this basis for a post-verdict motion for judgment as a matter of law is not properly asserted, as PMI did not raise this ground in its pre-verdict motion. *See* ECF No. 333-3; *Advanced Recovery Sys. v. Am. Agencies*, 923 F.3d 819, 825 (10th Cir. 2019) ("If a ground is omitted from a pre-verdict motion, however, the ground cannot be asserted in a post-verdict motion . . . ."). Accordingly, the court denies PMI's

---

[3] Further, the Tenth Circuit authority that PMI cites in support of this argument does not compel the opposite conclusion. In *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 931 (10th Cir. 1979), the Tenth Circuit noted that a trial court's decree included "an order for the payment of Social Security taxes," and "provided for withholding federal, state and local taxes and the payment by the employee of his or her part of the Social Security tax" as part of "a formula for computation of the back pay." But the Tenth Circuit did not thereby adopt this formula for all backpay computations and noted that "courts of appeal are in general agreement that the formula of computation and the determination of recipients are matters within the discretion of the district court." *Id.* at 932. The second case that PMI cites is *Blim v. Western Electric Co., Inc.*, 731 F.2d 1473, 1480 (10th Cir. 1984), in which the Tenth Circuit held that a district court's award of "damages to plaintiffs for increased tax liability caused by the receipt of damages in a lump sum" was in error. The Tenth Circuit reasoned that "the court's award for increased tax liability was improper" because the "plaintiffs will suffer no significant tax penalty" through using the tax code's averaging provisions. *Id.* However, as the Tenth Circuit subsequently noted, the reasoning in *Blim* is "inapplicable" because the averaging provisions referenced in *Blim* were repealed in 1986. *EEOC v. Beverage Distribs. Co., LLC*, 780 F.3d 1018, 1024 (10th Cir. 2015) (citing Tax Reform Act of 1986, Pub. L. No. 99–514, § 141(a), 100 Stat. 2117 (repealing 26 U.S.C. §§ 1302–1305)).

motion for judgment as a matter of law as it rests on the argument that the evidence establishes that Mr. Barrick failed to use reasonable efforts to mitigate his damages.[4]

## CONCLUSION AND ORDER

For the foregoing reasons, PMI's Motion for Judgment as a Matter of Law (ECF No. 320) is DENIED.

DATED March 25, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[4] The court is also not persuaded by this argument on its merits. It is PMI's burden to prove that Mr. Barrick failed "to use reasonable efforts to mitigate [his] damages." *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980). Mr. Barrick presented evidence that, following his termination from PMI, he started looking for work immediately and daily, worked with a recruiter, sent out many resumes, and had multiple interviews before ultimately starting his own business. ECF No. 323-3 at 82–85. Although PMI contends that Mr. Barrick "knowingly thwarted his own efforts to seek employment because he unilaterally concluded it was 'difficult to explain [his] previous employment to potential employers'" (ECF No. 320 at 35 (citation omitted)), a reasonable jury could have concluded from the foregoing evidence that Mr. Barrick sufficiently mitigated his damages.