IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRANDON BARRICK,<br><br>Plaintiff/Relator,<br><br>v.<br><br>PARKER-MIGLIORINI INTERNATIONAL, LLC and JOHN AND JANE DOES 1–10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Case No. 2:12-cv-00381-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court is a motion brought by Plaintiff/Relator Brandon Barrick ("Mr. Barrick") requesting an award of attorneys' fees in the amount of $555,692.75 pursuant to 31 U.S.C. § 3720(h)(2) from Parker-Migliorini International, LLC and John and Jane Does 1–10 (collectively "Defendants"). (ECF No. 354). The court GRANTS the motion for fees in the amount of $312,192.75.

## BACKGROUND

In April 2012, Mr. Barrick filed a *qui tam* action against Defendants alleging that Defendants had violated the Federal Civil False Claims Act ("FCA"), 31 U.S.C. § 3729. (ECF No. 1). In his complaint, Mr. Barrick stated two causes of action. First, that Defendants had underpaid USDA inspection fees for meat shipped abroad in violation of the Reverse False Claims Act, 31 U.S.C. § 3729(a)(1)(G). Second, that Defendants had engaged in a conspiracy to underpay inspection fees in violation of the False Claims Act Conspiracy, 31 U.S.C. § 3729(a)(1)(C). On May 12, 2015, Mr. Barrick amended his complaint, and added a third claim alleging that

Defendants had retaliated against Mr. Barrick for his involvement in the *qui tam* actions by terminating his employment in violation of 31 U.S.C. § 3730. (ECF No. 21). On December 22, 2015, after hearing oral argument, Judge Dee Benson of the District of Utah dismissed Mr. Barrick's complaint for failing to state a claim under Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 47). Judge Benson dismissed the § 3729 claims brought by Mr. Barrick because the allegations concerning the false statements failed to meet the heighted pleading requirements of Rule 9(b). *Id.* Judge Benson dismissed the § 3730 claim brought by Mr. Barrick because the complaint did not allege that Defendants had notice that Mr. Barrick had initiated a FCA action. *Id.*

On February 4, 2016, the district court granted a motion filed by Mr. Barrick to reopen the case, and on February 14, 2016, Mr. Barrick filed a motion for leave to file a second amended complaint. (ECF Nos. 54, 55). On May 25, 2016, Judge Benson granted Mr. Barrick's motion to amend the § 3730 retaliation claim under the FCA, and denied Mr. Barrick leave to amend the reverse false claim under § 3729(a)(1)(G) and the false claims conspiracy under 31 U.S.C. § 3729(a)(1)(C) claims. (ECF No. 70). Mr. Barrick appealed the decision to deny him leave to amend the § 3729 claims to the Tenth Circuit, which affirmed the denial. *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1233 (10th Cir. 2017). Mr. Barrick then filed a Writ of Certiorari to the Supreme Court. On October 2, 2018, the Supreme Court denied his petition. (ECF No. 105). Thus, only the retaliation claim remained.

On June 29, 2021, the case was tried to a jury. The jury returned a verdict in favor of Mr. Barrick and awarded him $125,000 in economic damages. (ECF Nos. 303, 310). On March 25, 2022, this Court issued a judgment in favor of Mr. Barrick and ordered Defendant, Parker-Migliorini, to reinstate Mr. Barrick to a position with the same seniority status that he would have

had but for the discrimination, and to pay for Mr. Barrick's litigation costs and reasonable attorneys' fees. (ECF No. 351).

Three separate law firms represented Mr. Barrick during this case: Brown, Bradshaw, and Moffat ("BBM"), The Salt Lake Lawyers ("TSLL"), and Hollingsworth Law, LLC ("Hollingsworth Law"). Mr. Barrick initially hired BBM, which primarily performs criminal defense work, to represent him in the *qui tam* actions arising from the reverse false claim and false claim conspiracy claims. In March 2017, BBM associated with attorney Robert Cummings of TSLL, who specializes in civil litigation, to work on a Touhy motion related to the case. Upon moving to the law firm of Snow, Christensen, & Martineau in 2019, Mr. Cummings withdrew from representing Mr. Barrick due to a conflict of interest. In April 2019, BBM associated with Hollingsworth Law, which specializes in employment law, to handle Mr. Barrick's retaliation claim.

All three law firms agreed to represent Mr. Barrick under a contingency fee arrangement. The three firms attached declarations and billing records to their initial motion. (Bradshaw Decl. Ex. 1, ECF No. 354-1; Salt Lake Lawyers Decl. Ex. 2 ECF No. 354-2; Hollingsworth Decl. Ex. 3, ECF No. 354-3). Mr. Barrick attached the retainer agreements between Mr. Barrick and Hollingsworth Law, Mr. Barrick and BBM, and the Joint Prosecution Agreement between BBM and TSLL to his reply brief. (ECF No. 374-1).

Mr. Barrick requests $555,692.75 total in attorneys' fees. BBM seeks $297,630.50. TSLL seeks $6,737,50. Hollingsworth Law seeks $251,324.75.

Defendants oppose the motion, arguing that Mr. Barrick's attorneys' fee requests are excessively high. First, Defendants claim that Mr. Barrick is not entitled to attorneys' fees arising from the two failed *qui tam* actions. Second, Defendants contest specific charges that were

3

included in the calculation of reasonable attorneys' fees arising from the successful retaliation claim. The court addresses each of Defendants' contentions in turn.

## LEGAL STANDARD

Prevailing parties in a retaliatory action case can recover reasonable attorneys' fees from the opposing party. 31 U.S.C. § 3730(h)(2). Rule 54 of the Federal Rules of Civil Procedure and DUCivR 54-2 govern the procedure by which this court grants attorneys' fees. "One who seeks an award of attorney fees . . . has the burden of producing evidence to buttress the requested award. When the evidence presented is insufficient, an award of attorney fees cannot stand." *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (citation omitted). The initial burden of producing evidence in support of a fee award includes an obligation to allocate a "fee request according to [the moving party's] underlying claims." *Id.*; *accord Valcarce v. Fitzgerald*, 961 P.2d 305, 317 (Utah 1998) (the evidence submitted by the party requesting fees "must distinguish between those fees incurred in connection with successful and unsuccessful claims"). The moving party must "categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees." *Reighard v. Yates*, 285 P.3d 1168, 1182 (Utah 2012) (citation omitted).

## ANALYSIS

As a preliminary matter, the court denies Defendants' request for oral argument. The court has already granted Defendants' request to file a sur-reply brief (ECF No. 376), and neither party has indicated that new information will be presented at a hearing. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998) ("[M]any courts have long accepted the proposition that

4

there is no need for an evidentiary hearing in a[sic] attorney's fees case when a record has been fully developed through briefs, affidavits, and depositions.").

Defendants argue that the motion for attorneys' fees should be denied because Mr. Barrick failed to attach his retainer agreements with the firms to the initial motion for attorneys' fees. The court disagrees. The attorneys' fees motion states that each law firm agreed to be paid pursuant to a contingent fee arrangement. (ECF No. 354). Plaintiff attached the corresponding contingent fee agreements to his reply brief, and the court provided Defendants with the opportunity to respond through a sur-reply brief. For the purposes of this motion, the court concludes that the retainer agreements do not materially differ from contingent fee agreements. As such, the court is not persuaded that Mr. Barrick's initial failure to attach the agreements has unduly prejudiced Defendants and therefore does not warrant denial of Mr. Barrick's entire claim to attorneys' fees.

## I.     *Qui Tam* Claims

The parties disagree on whether work on the *qui tam* actions can be separated from work on the retaliation claims. Defendants assert that the time counsel spent on the two failed *qui tam* actions should not be recoverable as attorneys' fees for the retaliation action because the *qui tam* actions are not sufficiently related to the retaliation claim. Plaintiffs cannot recover attorneys' fees for unsuccessful and unrelated claims. *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983) ("In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . work on one claim will be unrelated to [] work on another claim.").

However, Mr. Barrick asserts that the claims are related and that prosecution of the *qui tam* actions "was both relevant and necessary to the retaliation claim." (Reply at 5, ECF No. 374). Mr. Barrick argues that in order to prevail on the retaliation claim, he needed to establish a good faith

basis for bringing the *qui tam* actions. Mr. Barrick posits that because some of the work that went into the *qui tam* action was later used in the prevailing retaliation claim, he is entitled to recover for all of the work on the *qui tam* actions. In lawsuits that "cannot be viewed as a series of discrete claims [,]" "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis." *Hensley*, 461 U.S. at 435.

Related claims are based on "a common core of facts" or "related legal theories." *Id.* When claims are related, there is "one bundle of proof" and "no way to separate the work on the core issue." *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412–13 (10th Cir. 1993) (explaining that plaintiff's Title VII and state law claims were interrelated with her Equal Pay Act claim). However, simply arising under the same act "does not, in and of itself, create a common core of facts." *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995) (holding that challenges to a fetal experimental statute, serious medical emergency statute, and spousal notification statute were sufficiently unrelated because they introduced "a host of unrelated issues.").

The court is persuaded that it would be improper to allow Mr. Barrick to recover for all of the *qui tam* work under the guise of the successful retaliation claim. The *qui tam* actions are sufficiently distinct from the retaliation claim to warrant such a result. First, the legal and factual proof for a claim pursuant to § 3730(h) is different from that of a claim pursuant to § 3729(a)(1)(G) or a claim pursuant to § 3729(a)(1)(C). *Compare* 31 U.S.C. § 3729(a)(1)(G) ("[Anyone who] knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States government . . . .") *and* 31 U.S.C. § 3729(a)(1)(C) (providing liability for anyone who "conspires to commit a violation") *with* 31 U.S.C. § 3730(h)

6

("Any employee . . . shall be entitled to all relief . . . if that employee . . . is discharged . . . or in any other manner discriminated against . . . because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter."). Successful *qui tam* plaintiffs can recover attorneys' fees pursuant to a provision that is separate from the retaliation claim recovery provision. 31 U.S.C. § 3729(d).

Moreover, Mr. Barrick did not need to plead an actual violation of the FCA in order to prevail in a retaliation action under § 3730(h). *See United States ex. Rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2015 WL 6801829, at *7 (D. Kan. Nov. 5, 2015) ("A plaintiff seeking whistleblower protection must plausibly allege facts showing that: (1) the employee engaged in protected activity; (2) the employer received notice of the employee's protected activity; and (3) the employer discriminated against or discharged the employee for engaging in protected activity."). Proof of the underlying violation is generally not a prerequisite to recovery. *See Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (upholding plaintiff's recovery on a discriminatory retaliation claim even though the district court did not find that RE/MAX discriminated due to the plaintiff's sex). *Accord Jeffreys v. Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998) ("A plaintiff may maintain an action for retaliation based on participation in a protected proceeding regardless of whether the conduct forming the basis of her underlying complaint is adjudged to violate Title VII"); *Shinwari v. Raytheon Aircraft Co.*, 215 F.3d 1337, 2000 WL 731782, at *4 (10th Cir. June 8, 2000) (holding that a plaintiff does not need to prove the underlying violation to recover under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d)).

Second, the manner in which this case unfolded establishes that the claims are separate. The motion for attorneys' fees states that "[i]n April of 2019, BBM associated with Hollingsworth

Law Office, LLC ("Hollingsworth Law") to handle Mr. Barrick's remaining FCA retaliation claim." (Pl.'s Mot. at 4, ECF No. 354). Hiring a different law firm to work on the retaliation claim indicates that the work on the retaliation claim was separable from the work on the *qui tam* actions. The retainer agreement between Mr. Barrick, Hollingsworth Law, and BBM specifically excludes recovery for work that BBM performed that was related to appealing the district court's decision on the *qui tam* actions. Ex. 1 at 3, ECF No. 374-1 ("[T]ime expended by Brown, Bradshaw & Moffat in pursuit of the Tenth Circuit Appeal will not be counted towards its pro rata share."). Furthermore, Mr. Cummings created separate billing files for the retaliation work and the *qui tam* work. *See* Wormdahl Decl., Ex. 2 at 3, ECF No. 354-2 ("A second matter was created in Bill4Time under Mr. Barrick's client file, which was titled 'Wrongful Termination.' Therefore, the Bill4Time records evidence that Mr. Cummings segregated his time between the hours devoted to the *qui tam* portion of this lawsuit and the wrongful termination portion of this lawsuit . . . ."). In short, Mr. Barrick and his attorneys' actions undercut their claim that it is impossible to separate the work on the *qui tam* actions from the work on the retaliation claim.

Undoubtedly, some of the work prosecuting the *qui tam* actions was later used in the retaliation claim. However, it would be unreasonable to allow Mr. Barrick to recover for *all* of the *qui tam* work through an attorneys' fee award on the retaliation claim. As Mr. Barrick is seeking to recover attorneys' fees from the opposing party, Mr. Barrick bears the burden of demonstrating that the work performed in relation to the *qui tam* actions was necessary for the successful retaliation claim.

Defendants also ask the court to bar BBM for recovering for work that the billing records did not clearly indicate was related to the retaliation claim. Specifically, Defendants request that the court reduce BBM's fee by $93,475, which corresponds to work performed by BBM prior to

Mr. Barrick's termination date. The court agrees that it would be unreasonable to allow Mr. Barrick to recover for work performed before the retaliation claim arose. Second, Defendants ask the court to reduce BBM's fees by $150,000 for the period from November 14, 2012 to June 30, 2016, as only four billing records explicitly mention the retaliation claim during this period. After parsing BBM's billing records, the court agrees that Mr. Barrick has only demonstrated that four of BBM's work entries during this period related to the retaliation claim. Therefore, the court reduces attorneys' fees for BBM by an additional $150,000.

In short, the court concludes that where Mr. Barrick has failed to meet his burden of demonstrating that the work on the *qui tam* actions was necessary for the retaliation claim, work on the *qui tam* actions cannot be recovered pursuant to the attorneys' fee award for the retaliation claim. Thus, the court reduces BBM's requested attorneys' fee from $297,630.50 by the amount of $243,475. At this juncture, BBM's attorneys' fee award amounts to $54,630.50.

## II.     Retaliation Claim

Having adjusted Mr. Barrick's attorneys' fees for the unrelated *qui tam* actions, the court moves to the calculation of reasonable attorneys' fees for the successful retaliation claim. First, the court calculates the loadstar by multiplying "[time, which is] the number of hours reasonably expended on litigation . . . by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "[T]he district court must carefully scrutinize the total number of hours reported . . . that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients . . . ." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (overruled on other grounds). To determine whether the time can reasonably be billed, courts should consider the allocation of time to specific tasks, the task staffing, the litigation time, and the skill and experience of the attorneys. *See id.* at 553–55; *Hensley*, 461 U.S. at 434. To determine

a reasonable rate, courts consider "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos*, 713 F.3d at 555.

Once the district court has calculated the loadstar, it may adjust the loadstar to equitably reflect reasonable attorneys' fees. *Hensley*, 461 U.S. at 434. For example, where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous and raised in good faith." *Hensley*, 461 U.S. at 436 ("[T]he District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had respondents prevailed on only one of their six general claims, . . . a fee award based on the claimed hours clearly would have been excessive.").

A.   Time

Defendants challenge Mr. Barrick's calculation of the number of reasonable attorney hours on seven grounds. The court addresses each in turn.

First, Defendants assert that Mr. Barrick cannot recover for unsuccessful motions. Defendants ask that the court exclude the time that BBM spent working on the second amended complaint, the time that Hollingsworth Law spent working on a Rule 56(d) motion to reopen discovery and stay Defendants' motion for summary judgment, and the time that Hollingsworth Law spent working on Mr. Barrick's motion for pre-judgment interest because these motions were ultimately unsuccessful. The court declines to do so. Striking time spent on unsuccessful motions effectively requires the court "to second-guess every decision made by Plaintiffs to determine whether each decision actually advanced Plaintiffs' case." *N. Regal Homes, Inc. v. RoundPoint Mortg. Servicing Corp.*, No. 1:15-CV-00035, 2018 WL 582464, at *10 n.3 (D. Utah Jan. 29, 2018).

As Mr. Barrick did not engage in frivolous motions for the sole purpose of collecting more attorneys' fees, the court declines to reduce the fees simply because some of his motions were unsuccessful.

Second, Defendants ask the court to reduce the number of recoverable hours because BBM and Hollingsworth Law engaged in block billing. Block billing, or "lumping multiple tasks into a single entry of time," is not forbidden, but rather is discouraged because it makes it difficult for the court to discern whether time has been reasonably allocated to specific tasks. *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214 (10th Cir. 2000). Having reviewed the records, the court concludes that the majority of the billing entries are specifically detailed and do not constitute block billing. (Ex. 1, ECF No. 354-1; Ex. 3, ECF No. 354-3). While a few of the entries describe multiple tasks, the infrequency of block-billing, and the corresponding reasonability of the hours billed when block billing does occur does not warrant a fee reduction.

Third, Defendants assert that counsel retained by Mr. Barrick engaged in duplicative work. Specifically, Defendants claim that BBM and Hollingsworth Law performed duplicative work on the retaliation claim, and BBM and TSLL performed duplicative work on discovery matters. The court disagrees. Efforts are not duplicative simply because multiple attorneys worked on the same matter. *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1104–07 (10th Cir. 2020). BBM's work on the retaliation case was not duplicative with the work performed by Hollingsworth Law. The case was nearly a decade old before the retaliation claim was heard at trial, and only one BBM attorney, JC Bradshaw, attended the trial. TSLL and BBM did not engage in duplicative discovery work. BBM retained TSLL for Mr. Cummings's expertise on Touhy motions, but BBM maintained the extensive factual background knowledge of the case necessary

to prepare the motion. Each allegation of duplicative work involved, at most, either two or three attorneys working a reasonable number of hours. *See Ramos*, 713 F.2d at 554 (finding that attorneys were engaged in duplicative work where "[m]ore than a dozen attorney spent time on the instant litigation for the plaintiffs; at least five attorneys spent more than 200 hours each on the case and two spent more than 2000 hours each."). Thus, the court rejects Defendants' request to reduce fees on the grounds of duplicative work.

Fourth, Defendants request that the court exclude the time that JC Bradshaw spent preparing and attending the trial because Mr. Bradshaw did not enter an appearance at trial. Defendants also request that the court reduce the number of hours Hollingsworth Law billed because it did not evenly split the time billed by the two attorneys who appeared at trial. As previously discussed, J.C. Bradshaw has extensive knowledge on the case. There is also no requirement that trial lawyers split work evenly. The court declines to second-guess Mr. Barrick's trial strategy or the actual hours spent by each attorney. Having presided over the trial and reviewed the billing records submitted by Mr. Barrick's counsel, the court is confident in its assessment that (with the exception of two minor entries discussed below) that the time billed was reasonable and necessary to the successful resolution of Mr. Barrick's retaliation claim.

The court rejects Defendants' fifth assertion that TSLL cannot recover because the declaration submitted by Mr. Wormdahl, the remaining TSLL partner, is unreliable. The court also rejects Defendants' sixth assertion that the court should reduce TSLL's time because Mr. Cummings engaged in non-contemporaneous time keeping. Mr. Barrick attached Mr. Cummings's billing records along with Mr. Wormdahl's declaration. Mr. Cummings billed his time on a daily basis and the records include specific descriptions of the work he performed. (ECF No. 354-2). Furthermore, Mr. Wormdahl clarified that even though Mr. Cummings entered time on a monthly

basis, "during the relevant time period, his time keeping and billing records were generally up to date and complete each day." (Wormdahl Decl. Ex. 2 at 2, ECF No. 354-2). In short, the court declines to reduce the number of hours billed by TSLL.

Finally, the court addresses Defendants' seventh assertion that Hollingsworth Law engaged in unnecessary work. After reviewing each of Defendants' specific objections, the court is persuaded that it should reduce the time claimed by Hollingsworth Law by 0.5 hours. The court excludes 0.3 hours that arise from an email with no subject line, and 0.2 hours that arise from an email concerning maternity leave. In conclusion, after addressing all seven of Defendants' arguments, the court reduces Hollingsworth Law's billable time by 0.5 hours.

B.  Reasonable Rate

Having adjusted the time calculation, the court considers Defendants' arguments for reducing BBM and TSLL's billing rates. Defendants urge the court to reduce the hourly rates charged by BBM and TSLL because neither firm provided market data or a certification supporting the reasonability of their rates, and neither firm specializes in employment law. Failing to present market data does not automatically justify a rate reduction. "[A] district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Bee v. Greaves*, 910 F.2d 686, 689 n. 4 (10th Cir. 1990). Attorneys from BBM charged up to $350 per hour, and Mr. Cummings charged $275 per hour, which are both reasonable rates for Salt Lake City. *See Waas v. Red Ledges Land Development, Inc.*, No. 2:20-cv-00580-TC-DBP, 2022 WL 35717, at *4 (D. Utah Nov. 2, 2021) (holding that $650 was a reasonable hourly rate for partners to bill in Salt Lake City). Furthermore, although *Ramos* permits courts to reduce the hourly rates of lawyers billing outside their specialties, the court is not persuaded that a rate reduction is appropriate in this case. BBM and TSLL are not employment law specialists, but the work they

13

performed for the retaliation claim, establishing that the FCA claim was filed in good faith, and filing a Touhy motion, was within their respective specialties. Thus, the court declines to adjust the hourly rates.

    C.    Adjustments

Having examined the loadstar calculation, the court proceeds to make reasonable adjustments. *See Ramos* 713 F.2d at 556 – 560 (analyzing law clerk, paralegal, and other expenses as attorneys' fees after calculation of the loadstar). Defendants request that the court make three adjustments: (1) exclude the fee BBM paid Greg Rogers for discovery review, (2) exclude the amount Hollingsworth Law paid its law clerk Whitney Nelson, and (3) reduce attorneys' fees so that they are proportionate to Mr. Barrick's jury award. The court grants Defendants' first request and denies the latter two requests.

Mr. Barrick claims that because Greg Rogers is an attorney whom BBM had consulted for his expertise on Touhy issues, fees paid to Mr. Rogers can be included as attorneys' fees. However, the retainer agreement between Mr. Barrick and BBM states that "[i]f additional counsel is deemed desirable by Attorneys, then Attorneys are hereby authorized to retain such additional counsel as they deem necessary, but the retention of additional counsel shall not increase attorneys = [sic] fees as set forth in this agreement." (Ex. 1 at 3–4, ECF No. 374-1). Unlike with TSLL and Hollingsworth Law, Greg Rogers is not covered by a separate retainer agreement. Therefore, pursuant to Mr. Barrick's retainer agreement with BBM, the court concludes that BBM's attorneys' fees cannot include the amount paid to Greg Rogers.

Next, Defendants assert that the court should exclude work performed by Whitney Nelson, who worked as a law clerk for Hollingsworth Law. To determine whether time spent by law clerks can be included in attorneys' fees, first, "[t]he district court must determine whether law clerk and

14

paralegal services are normally part of the office overhead . . . ." *Ramos*, 713 F.2d at 558. If they are not, then "the court may award them separately as part of the fee for legal services." *Id.* at 559. Because Hollingsworth Law is a two-person firm, and Ms. Hollingsworth stipulates that Whitney Nelson was hired to assist with the trial, the court concludes that Whitney Nelson's work can be included in attorneys' fees. *See* Hollingsworth Decl. Ex. 3, ECF No. 354-3.

Finally, Defendants assert that the fees requested by Mr. Barrick's counsel ($555,692.75) are excessive because the jury awarded Mr. Barrick only $125,000. Defendants cite decisions from other circuits to support this claim. But, the Tenth Circuit has explicitly rejected the practice of adjusting attorneys' fees in proportion to the jury award. *See Ramos*, 713 F.2d at 557 ("Some courts have reduced fees when the thrust of the suit was for monetary recovery and the recovery was small compared to the fees counsel would have received if compensated at a normal rate for hours reasonably expended. We reject this practice."). Adhering to Tenth Circuit precedent, the court declines to consider the proportionality of the attorneys' fees award to the jury award in adjusting attorneys' fees.

In conclusion, the court adjusts the loadstar by excluding the fee that BBM paid to Greg Rogers, thereby reducing BBM's attorneys' fees by an additional $360.

## CONCLUSION & ORDER

The court GRANTS Mr. Barrick's motion for attorneys' fees in the total amount of $312,192.75.

(1) The court awards BBM $54,270.50. BBM initially requested an award in the amount of $297,630.50. The court excluded $243,475 for work on unrelated, unsuccessful *qui tam* actions, and the $360 fee paid to Greg Rogers.

(2) The court awards TSLL the initial requested amount of $6,737,50.

(3) The court awards Hollingsworth Law $251,184.75. Hollingsworth Law initially requested an award in the amount of $251,324.75. The court excluded half an hour of attorney Katie Panzer's time, which is billed at the rate of $280 per hour.

DATED February 2, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge
